MISSOURI RIVER POWER COMPANY, Respondent, *v.* STEELE, County Treasurer, Appellant.

(No. 2,175.)

(Submitted May 1, 1905. Decided May 29, 1905.)'

*Taxation—Legislative Power—Constitutional Limitations— County Officers—Duties—Power of Legislature to Prescribe—Assessment of Real Estate—By Whom Made— Board of Appraisers—Assessor—Statutory Provisions—Constitutionality.*

Legislative Power—Plenary—Constitutional Limitations.
    1. In the matter of legislation, the people, through the legislature, have plenary power, except in so far as prohibited by the Constitution, and one denying the authority in any given instance must point out distinctly the particular constitutional provision limiting or prohibiting the power exercised.

Legislature—Duties of County Officers—Constitution.
    2. The legislature may not enact any law in conflict with constitutional provisions defining the duties of county officers; but so far as such duties are not prescribed by the Constitution, they may be by legislative enactment.

Board of Appraisers—Statutes—Constitutionality—Assessor.
    3. *Held,* that in creating a board of appraisers to fix the valuation of real property for the purpose of assessment by Act of fifth legislative assembly (Session Laws of 1897, p. 195), the legislature was acting within its authority, and that in clothing the board with power to fix the valuation on real property in the first instance, no provision of the Constitution was contravened; hence a taxpayer had

no right to have his property taxed on the valuation as made by the assessor.

Legislature—County Offices—Power to Create.

4. The legislature may create new county offices and devolve upon them duties respecting the management and control of county affairs.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

Action by the Missouri River Power Company, a corporation, against W. L. Steele, treasurer of Lewis and Clark county. From an order granting plaintiff's application for an injunction *pendente lite,* defendant appeals. Reversed.

*Mr. Edwin W. Toole,* and *Messrs. Bach & Wight,* for Respondent.

The tax is illegal and not authorized by law. Section 3698, Political Code of Montana, is unconstitutional, and all proceedings thereunder are unlawful. The principles of law which govern this case are very similar to those involved in the case of *Mutual Life Ins. Co.* v. *Martien,* 27 Mont. 437, 71 Pac. 470. When the framers of the Constitution used the word "assessor," they used it advisedly, and with the meaning usually, if we may not in fact say universally, accorded the term. (*Gardner* v. *Collins,* 2 Pet. 93; *Brewer* v. *Blongher,* 14 Pet. 178; *Steere* v. *Brownell,* 124 Ill. 27, 15 N. E. 26; *Martin* v. *Hunter,* 1 Wheat. 326; *State* v. *Engle,* 21 N. J. L. 354; 23 Am. & Eng. Ency. of Law, p. 298, and cases; *Smith* v. *State,* 66 Md. 215, 7 Atl. 49; *Newell* v. *People,* 7 N. Y. 97; *Gibbons* v. *Ogden,* 9 Wheat. 188; *People* v. *Purdy,* 2 Hill, 31.)

Under section 3698, *supra,* all power and discretion is taken away from the assessor. The legislature has virtually made the provision of the Constitution, in so far as an "assessor" elected by the people is concerned, a dead letter. The legislature has overruled the Constitution, and enacted that, instead of an "assessor" being elected by the people, there shall be three assessors appointed by the district judge. It is true that they name these three persons "appraisers," but the name does not

change the fact that they are assessors; and the bare fact that they allow the person elected by the people to retain the title "assessor," while taking away from him all of the duties which that term implies, do not by any means satisfy the constitutional provision that he shall be assessor. We maintain that the legislature has deprived the people of their right to have the unrestricted judgment of the assessor as to the value of their property for the purposes of taxation; that is, unrestricted by the controlling voice of any person other than himself, subject to the provisions as the law may direct to control him as to the procedure he shall follow in reaching his own conclusions of the value of the property, and subject to review by a supervising board. This constitutes the initial step of that process of law, which is "due process of law" authorizing the seizure or sale of property for unpaid taxes.

The following authorities sustain our position that the said tax is absolutely void: *Mutual Life Ins. Co.* v. *Martien,* 27 Mont. 437, 71 Pac. 470; *Savings & Loan Soc.* v. *Austin,* 46 Cal. 415; *Hawkins* v. *Mangrum,* 78 Miss. 97, 28 South. 872; *Union Pac. R. Co.* v. *Alexander,* 113 Fed. 352; *Reily* v. *Lancaster,* 39 Cal. 354; *People* v. *Hastings,* 29 Cal. 449; *Ferris* v. *Coover,* 10 Cal. 589; Desty on Taxation, vol. 1, p. 450; *Williams* v. *Corcoran,* 46 Cal. 553; *In re House Bill No. 270* (Colo.), 21 Pac. 476.

*Mr. Albert J. Galen,* Attorney General, and *Mr. F. W. Mettler,* for Appellant.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an appeal from an order of the district court granting an injunction *pendente lite.* The object of the suit is to restrain the county treasurer of Lewis and Clark county from selling certain real estate belonging to plaintiff for delinquent taxes assessed against such property for the year 1902.

It is alleged in the complaint that on January 20, 1902, Honorable Henry C. Smith, senior judge of the district court of Lewis and Clark county, duly appointed a board of appraisers pursuant to the provisions of section 3698 of the Political Code and amendments thereto; that such board did fix the valuations upon plaintiff's real property; that the plaintiff presented to the county assessor a list of such property, showing a total actual valuation thereof of $430,365, but notwithstanding this, the county assessor of Lewis and Clark county, without himself estimating the value of such property, affixed the valuations so determined upon by the board of appraisers at $763,370; that plaintiff appeared before the board of equalization and sought a reduction of its assessment, but its application was denied, except as to a small portion thereof; that plaintiff has paid all taxes on its personal property for the year 1902, and tendered payment of the taxes upon its real property upon the valuation thereof as listed by the plaintiff, but that this tender was refused. It is then alleged that the county treasurer has advertised such real property for sale to pay the taxes assessed against the same upon the valuation made by the board of appraisers and listed by the assessor, as corrected by the board of equalization. To the complaint, which was verified positively, an answer was filed, verified upon information and belief, and upon these pleadings only the court heard the application for a temporary injunction, and made the order complained of. It is conceded that the answer had no evidentiary value.

A number of minor questions are suggested which need not be considered. The principal contention is embodied in the query: Was section 3698, Political Code, as amended by an act of the Fifth Legislative Assembly, approved March 3, 1897 (Session Laws of 1897, page 195), constitutional? (This section and section 3699 were repealed by an Act of the Eighth Legislative Assembly, approved February 6, 1903: Session Laws of 1903, page 1, chapter 1.) If this section was con-

stitutional, then there is no merit in plaintiff's contention; if not, then the injunction was properly granted.

Section 3698 above, as amended, among other things, provides: "That in all counties in the state of Montana which now have, or those which may hereafter acquire, a total assessment of eight million dollars or more, the judge of the district court, or if there be two judges in the district then the senior judge of said district court shall on or before the second Monday of February of each year, designate three reputable citizens who shall be residents and taxpayers in the county for which they are appointed, who shall constitute a board of appraisers whose duty it shall be to fix valuation of real estate in the county for the purpose of assessment by the county assessor, which valuation so fixed by said board of appraisers shall constitute the value or 'true value' of such real estate. * * * The assessor, in making up his assessment list of said estate, is hereby prohibited from assessing any greater or less value upon any piece of real estate than that so fixed by said board of appraisers. * * * It shall be the duty of the county assessor to attend the meeting of the board of appraisers and give such board all the information in his possession concerning property to be assessed and its valuation."

The contention of the plaintiff is that, as the Constitution (Article XVI, section 5) provides for the election of an assessor in every county, no other person than such assessor can fix the valuation of property for revenue purposes, and urges that this question was determined in *Mutual Life Ins. Co.* v. *Martien,* 27 Mont. 437, 71 Pac. 470. In the *Martien Case* this court construed that portion of section 5, Article XVI, above, which reads as follows: "There shall be elected in each county * * * one treasurer, who shall be collector of taxes"; and held that this language, when read in the light of section 29, Article III, of the Constitution, prohibited anyone else from being such collector. That case proceeded upon the theory that, as the Constitution had designated one particular officer as collector, or, in other words, had defined one duty of

the county treasurer, and as the Constitution expressly declares that its provisions are mandatory and prohibitory, unless by express terms they are declared to be otherwise, therefore no one else could lawfully act as collector of taxes. The language construed was clearly susceptible of no other interpretation. But has this decision any application here?

The provision of the Constitution relative to the office of assessor found in section 5, article XVI, above, is merely that there shall be elected in each county one assessor. That section provides: "There shall be elected in each county the following officers: One county clerk, who shall be clerk of the board of county commissioners and *ex-officio* recorder; one sheriff, one treasurer, who shall be collector of taxes; * * * one county superintendent of schools; one county surveyor; one assessor; one coroner; one public administrator. * * *"

It will be observed that there is no attempt to define all or any of the duties of any of these officers, except the county clerk and treasurer. Of the county clerk it is said, he shall be clerk of the board of county commissioners and *ex-officio* county recorder; and of the treasurer it is said, he shall be collector of taxes. The election of the members of the board of county commissioners is provided for in section 4 of Article XVI, and the election of the county attorney in section 19 of Article VIII. Section 15 of article XII provides that the board of county commissioners of each county shall constitute a county board of equalization, and further provides: "The duty of the county boards of equalization shall be to adjust and equalize the valuation of taxable property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."

In the matter of legislation the people, through the legislature, have plenary power, except in so far as inhibited by the Constitution, and the person who denies the authority in any given instance must be able to point out distinctly the particular provision of the Constitution which limits or prohibits the

power exercised.   (Cooley's Constitutional Limitations, 200; *Ex parte Boyce,* 27 Nev. 299, 75 Pac. 1, 65 L. R. A. 47.)

Does the mere enumeration of county officers prohibit the legislature from defining their duties? Of course, in so far as the Constitution has defined those duties, as in the instances mentioned—of the county clerk, treasurer, and board of equalization—the legislature may not enact any law in conflict therewith. So far as those duties are not prescribed by the Constitution, they may be by legislative enactment (*Territory* v. *Carson,* 7 Mont., at page 428, 16 Pac., at page 573), and in the Political Code the duties of the several county officers are particularly specified. If this is not so, this inquiry becomes pertinent: What are the duties of the sheriff, if those duties may not be defined by law? That office is created by the Constitution, but the duties appertaining thereto are in nowise mentioned. And the same inquiry is likewise applicable to the office of superintendent of schools, coroner, surveyor, public administrator, or assessor. The mere suggestion of the question demonstrates the confusion which would result from holding that these officers are entirely free from legislative control, or that the legislature may not prescribe the duties required of them, within the limitation that it may not entirely denude an office created by the Constitution of its functions and leave an office in name only.

But may the legislature create new county offices and devolve upon them duties respecting the management or control of county affairs? Section 6 of Article XVI of the Constitution provides: "The legislative assembly may provide for the election or appointment of such other county, township, precinct and municipal officers as public convenience may require," etc. Acting under the provisions of this section, the offices of board of appraisers and county auditor were created and their respective duties defined. The office of board of appraisers was originally created by an Act of the Second Legislative Assembly, approved March 6, 1891 (Session Laws of

1891, page 73), and the chairman of the board of county commissioners, the assessor, and one third person composed the board.   This Act was amended by an Act of the Third Legislative Assembly, approved February 24, 1893 (Session Laws of 1893, page 64), and the effect of the amendment was to make the board consist of three persons appointed by the district judge.   The provisions of this last Act were carried forward into the Political Code as sections 3698 and 3699.   The amendment made by the Fifth Legislative Assembly is immaterial so far as this case is concerned.   Nor is the assessor denied any participation in the fixing of the values of real estate; on the contrary, it will be observed that by express terms he is required to attend the meeting of the board of appraisers and to give his opinion as to the value of the real estate to be appraised.

If the contention of the plaintiff prevails, no one else but the assessor can fix the valuation to the property in controversy, and the only legitimate inference from this is that his appraisement must be conclusive.   But such a contention is distinctly antagonistic to section 15, Article XII, of the Constitution, which makes the board of equalization a supervisory body with authority to raise or lower any valuation placed upon a particular piece of property by the assessor.   So that there cannot be any merit in the claim that a taxpayer has the right to have his property taxed upon the valuation made by the assessor.

But, furthermore, section 16 of Article XII of the Constitution provides: "All property shall be assessed in the manner prescribed by law except as is otherwise provided in this Constitution.   The franchise, roadway, roadbed, rails and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization and the same shall be apportioned to the counties, cities, towns, townships and school districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities, towns, townships and school districts."

We might be somewhat confused as to the meaning of the phrase "in the manner prescribed by law," except for the interpretation placed thereon by the same section. By the first sentence of this section the legislature is left free to prescribe the manner in which property shall be assessed, except so far as the Constitution has prescribed such manner. And what is the exception? That "the franchise, roadway, roadbed, rails and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization." The manner, then, includes the agency which shall make the assessment; for the above excepting clause has no reference to the last portion of the section, which only refers to the division or apportionment of the assessment after the same is made, and can only refer to the agency employed, which in that clause is the state board of equalization.

We are satisfied, in view of these provisions of our Constitution, that the legislature was acting within its authority in creating the board of appraisers, and, in clothing such board with authority to fix the valuation upon real property in the first instance, it did not contravene any provision of the Constitution.

We think the enactment of the statute a valid exercise of legislative power, and that the district court erred in holding to the contrary. The order granting the injunction is reversed, and the cause is remanded.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.

Rehearing denied, July 29, 1905.