In re BECK'S ESTATE. STATE et al., Appellants, v.
BARNARD et al., Respondents.

(No. 3,072.)

(Submitted January 22, 1912.  Decided February 5, 1912.)

[121 Pac. 784.]

*Probate Proceedings—Who may Take Under a Will—Power
of Legislature—State and State Orphans' Home Incompetent
to Take—Bequests—Interest—Statutory Construction.*

Wills—Who may Take Under—Power of Legislature.
1.  The right to make testamentary disposition of property depends
upon the will of the legislature, and it alone has the power to desig-
nate those persons who may take under a will.

Same.
2.  Under section 4725, Revised Codes, only natural persons and
corporations formed for scientific, literary or solely educational pur-
poses may take through testamentary disposition; other corporations,
unless expressly authorized by statute to do so, cannot so take.

Same—State Orphans' Home may not Take.
3.  *Held,* under section 4725, Revised Codes, which is exclusive in
its character, that the State Orphans' Home, not being a corpora-
tion, either public or private, of the nature designated therein as
capable of taking under testamentary disposition, may not do so.

Same—State Incapable of Taking.
4.  *Held,* further, that the state, not having given its consent to
become a beneficiary under a will, is incapable of taking as a
legatee.
        (Mr. Justice Smith dissenting.)

Statutory Construction—State not Included in General Provisions.
5.  The purpose of legislation being to prescribe rules to regulate
the conduct and protect and control the rights of the citizen, the
state is not included within the provisions of a statute unless it is
specifically so declared.

Wills—Bequests to Debtors—Interest.
6.  Where a testator had made a bequest of $3,000 "less a note of
$2,000" held by him against the beneficiary, the court properly decreed
that the latter was entitled under the will to receive only such balance
of the $3,000 bequeathed as would remain after deducting the principal
sum named in the note, together with interest thereon up to the date
of probate of the will.

*Appeal from District Court, Silver Bow County; Michael Don-
lan, Judge.*

Proceeding by the state in its own behalf and that of the
State Orphans' Home to have ascertained and declared the

rights of all persons entitled to share in the distribution of the estate of Josiah F. Beck, deceased. From the decree Agnes Beck, widow of deceased, the state, the State Orphans' Home, and others appealed. Affirmed.

*Mr. Albert J. Galen,* Attorney General, *Mr. W. H. Poorman,* and *Mr. J. A. Poore,* Assistant Attorneys General, submitted a brief in behalf of the State and the State Orphans' Home; *Mr. Poore* argued the cause orally.

The State Orphans' Home is a state institution, a mere agency of the state by means of which the state exercises its powers and discharges its duties through its state officials; it has neither corporate entity nor corporate powers, and is, therefore, not a corporation. (*Weary* v. *State University,* 42 Iowa, 335.) Decisions of other states relating to similar questions, but under differing constitutions, statutes and conditions, may be found collected in *State ex rel. Little* v. *Board of Regents,* 55 Kan. 389, 40 Pac. 656, 29 L. R. A. 378; *In re Royer's Estate,* 123 Cal. 614, 56 Pac. 461, 44 L. R. A. 364. The State Orphans' Home being a state institution, not a corporation, either public or private, and being in effect and in fact the state acting in the exercise of its authority and in the discharge of its duty, the question then arises, May the state lawfully take a bequest or devise?

The state is a sovereignty. As a sovereign it may exercise any power not taken away from it. The right to take and hold property is a necessary incident of sovereignty. The state Constitution is a limitation on power; not a grant of power. Hence the state retains all power not taken away from it by the Constitution itself. (*Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093.) The Constitution does not limit the power of the state in the taking of property, but clearly recognizes the unlimited power and authority of the state to take and hold property when required for the use of the state, or by the state for the use of any of its institutions. Section 1 of Article XVII of the state Constitution provides, in part: "All lands acquired by gift or grant or devise * * * shall be. public lands of the state and shall be held in trust for the. public

* * * for the respective purposes for which they have been or may be granted, donated or devised.'' Section 2 of Article XI provides that ''all other grants, gifts, devises or bequests made to the state for general educational purposes'' shall constitute a part of the school fund. The right and power of the state to take and hold property by bequest or devise is not only inherent in the state as sovereign, but that right is expressly recognized by the state Constitution.

By reason of these provisions of the Constitution the legislature cannot take from the state this power inherent in it and recognized and affirmed by the Constitution, although it may be that the legislature, acting for and on behalf of the state, and vested with plenary authority to establish the policy of the state, to provide the means of supporting the state, including the institutions thereof, and to legislate for the common good, may by a general law renounce any and all bequests, gifts and devises and refuse to accept the same. But the legislature of Montana never has, or attempted in any manner, to devest the state of this power, nor in any manner to curtail or limit that power, but it has distinctly and directly recognized such power, and that too in the very Act which relates to the various state institutions among which this appellant is named. (Chap. 73, Laws of 1909, p. 7; see, also, secs. 29 and 7330 *et seq.*, Rev. Codes.)

The state has the undoubted right to accept property by donation, gift or grant during the lifetime of the grantor. A bequest or devise is only a donation, gift or grant to take effect after the death of the grantor, and as there is no limit either in the Constitution or the statute as to the class or kind of property which may be owned by the state, or as to when it may acquire title thereto, the fact that the grantor or benefactor is dead at the time the grant or gift takes effect can make no difference with the right and power of the state to accept. The following authorities sustain the right and power of the state to take under the will: *Dickson* v. *United States,* 125 Mass. 311, 28 Am. Rep. 230; *In re Yale College,* 67 Conn. 237, 34 Atl. 1036; 2 Underhill on Wills, sec. 819; *Bedford* v. *Bedford,*

99 Ky. 273, 35 S. W. 926; 36 Cyc. 869; 18 Am. & Eng. Ency. of Law, 2d ed., p. 741.

Furthermore, the State Orphans' Home may take as an educational, charitable or benevolent society or institution under the provisions of section 4762, Revised Codes. This section of our Code is practically the same as section 1313 of the Civil Code of California. In the *Matter of the Estate of Richard Tobin,* reported in Myrick's Probate Reports, page 134, a bequest was made to the Boys' Roman Catholic Orphan Asylum, a charitable institution, and it was held in that case that the effect of section 1313 (our section 4762) is to qualify the terms of section 1275 (our section 4725), and charities and benevolent societies and corporations may take under the will. Charitable donations are looked upon with favor by the courts and are carried into effect whenever it is possible to do so. (*In re Estate of Willey,* 128 Cal. 12, 60 Pac. 471; 6 Cyc. 949; 5 Am. & Eng. Ency. of Law, 2d ed., 697.)

*Messrs. Mattison & Cavanaugh* submitted a brief in behalf of Appellants James R. and William Dickey.

By the terms of the will these appellants were bequeathed the sum of $3,000 in money, less a note of $2,000. The language of the will is clear and concise. If the testator had intended to deduct accrued or accruing interest on the note from this bequest, he surely would have said so. He evidently intended to give something, and at the same time make such mention of the note that it could not entirely consume his gift; otherwise, he could and would have simply given the note. Where an absolute gift is made in clear and express terms, or as is sometimes expressed, in positive language, the construction is that the interest thus given shall not be taken away, cut down or diminished by subsequent vague and general expressions. (Underhill on the Law of Wills, sec. 358; *Missouri Baptist Sanitarium* v. *McCune,* 112 Mo. App. 332, 87 S. W. 93; *Turber* v. *Batty,* 62 N. W. 995; *In re Dalrymple's Estate,* 13 Pa. Sup. Ct. 287.)

*Messrs. Nolan & Donovan, Mr. R. L. Clinton,* and *Messrs. Lamb & Walker,* for Respondents, other than Agnes Beck, submitted a brief; *Mr. Donovan* and *Mr. Clinton* argued the cause orally.

Assuming for the purpose of argument that the state of Montana is the real party in interest in this case, and that, as alleged by counsel for appellants, this bequest is in effect a bequest to the state of Montana, can the same be upheld? The right to bequeath property is not a natural or inherent right which cannot be taken from a party; but, on the contrary, is a privilege founded upon the permission granted by the state. (*Gelsthorpe* v. *Furnell,* 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170; *In re Walker,* 110 Cal. 387, 52 Am. St. Rep. 104, 42 Pac. 815, 30 L. R. A. 460; *In re Little,* 22 Utah, 204, 61 Pac. 899; *Evans* v. *Price,* 118 Ill. 593, 8 N. E. 854; *Patton* v. *Patton,* 39 Ohio St. 590.)

The Constitution of the state is not a grant of power to the legislature, but is a limitation of power; and, except as limited by the Constitution, the power of the legislature is unqualified. (*State* v. *French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415; *Missouri R. P. Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093.)  In the exercise of this power the legislature has enacted section 4725, Revised Codes, declaring who may take by will. It was incumbent upon the appellant to show, first, that it is a "person" within the meaning of that section; and, secondly, that it is not within the prohibitory class relating to corporations.  A statute substantially the same as the above statute was construed by the court of appeals of New York and the supreme court of the United States, and it was held by these tribunals that under such a statute, a body politic, to-wit, the United States, could not take because not a "person." (See *In re Fox,* 52 N. Y. 530, 11 Am. Rep. 751; *United States* v. *Fox,* 94 U. S. 315, 24 L. Ed. 192; also, *McBride* v. *Pierce County Commrs.,* 44 Fed. 17; *State* v. *Taylor,* 7 S. D. 533, 64 N. W. 548.)

The same view is supported by the statutory definition of the word "person." (Rev. Codes, sec. 6224.)

It is obvious that the state is not a "natural person," and it is equally obvious that it is not a corporation within the ordinary meaning of that term. (Rev. Codes, secs. 3805 and 3806.)

In the Constitution we find many restrictions upon private and municipal corporations. (Const., Arts. XV and XVI.) It has never been understood that these restrictions or qualifications of power had any application to the state itself, for the state is not a creature of law but is the organization perfected by the people of the territory under and by virtue of the Enabling Act. If, then, the state of Montana is not a corporation, it is plain that it is not a person within the meaning of section 4725 of the Revised Codes.

*Messrs. Breen & Jones* submitted a brief in behalf of Respondents Mary E. and Daniel S. Rice.

Corporations created under section 1 of Article X of the Montana Constitution, as the State Orphans' Home, are subject to the provision of section 4725, Revised Codes. (*In re Royers' Estate,* 123 Cal. 614, 56 Pac. 461, 44 L. R. A. 364.) And it follows, that unless the "Home" comes within the operation of this provision, or is expressly authorized by statute to take by will, the devise in the present case must fail. That it is not a scientific or literary corporation is obvious. Neither is it one formed for solely educational purposes. Nor was it viewed as an educational institution at the time of its creation, because when established it was not placed under the supervision of the state board of education, as is required by constitutional mandate. (Mont. Const., sec. 11, Article XII.) Nor does the law view the "Home" as an educational institution. (*Sargent* v. *Board of Education,* 35 Misc. Rep. 321, 71 N. Y. Supp. 954.) Nor is the "Home" expressly authorized by statute to take, within the meaning of section 4725. The fact that the amendment of 1909 (Laws 1909, p. 97) designates the manner in which devises shall be made does not expressly authorize the "Home" to take; it simply designates how institutions expressly authorized shall receive.

The contention of counsel that section 4762 of the Revised Codes authorizes the "Home" to take by will is likewise erroneous. That section refers solely to gifts to benevolent and charitable corporations organized under the laws of the state hereinbefore referred to, and is intended and is a limitation upon the right of corporations of that character to take by will, and has no reference whatsoever to public corporations created under section 1 of Article X, *supra,* under which the "Home" was established. This was the conclusion reached in New York, where a like limitation was found in the chapter of the statutes of that state authorizing the formation of benevolent and charitable corporations. (*In re Cooney's Will,* 98 N. Y. Supp. 676, 677, 112 App. Div. 659; affirmed in 187 N. Y. 546, 80 N. E. 1107.)

*Mr. W. F. Davis* submitted a brief in behalf of Appellant Agnes Beck, and argued the cause orally.

We contend that the court should have awarded all the estate (except the specific legacies agreed to) to Agnes Beck alone instead of partly to Agnes Beck and partly to the other relatives of the deceased, and that, having failed so to do at the original trial, the court should have done so in a new trial. The court having correctly held that the Orphans' Home cannot take under Beck's will, and the will having been renounced by the widow, all property of the estate (except the bequests referred to) was properly held by the court to be distributable as intestate property under the Montana statutes of succession. (Rev. Codes, sec. 4820, subds. 2 and 4; see *In re Ingram,* 78 Cal. 586, 12 Am. St. Rep. 80, 21 Pac. 435; *In re Carmody's Estate,* 88 Cal. 616, 28 Pac. 373; *In re Nigro's Estate,* 149 Cal. 702, 87 Pac. 384; *In re De Cigaran's Estate,* 150 Cal. 682, 89 Pac. 833; *Sweetland* v. *Transberg,* 176 Fed. 642.) The California statute (sec. 1386, Cal. Civil Code) was amended in 1905 so as to provide that the children of deceased brothers or sisters might take by right of representation. (*In re Nigro's Estate, supra.*) But the Montana statute has never been amended, and it stands the same as

did the California statute when *In re Ingram, supra,* was decided.

*Mr. W. F. Davies* submitted a brief in behalf of Respondent Agnes Davies, and argued the cause orally. The greater portion of the elaborate brief of counsel treats of the question: Assuming the Orphans' Home is capable of taking under the will, in what proportions shall the property be divided, the widow having renounced under the will and elected to take such share as the law will give her? The opinion not touching upon the matters thus discussed because of the conclusion reached, the points made, with authorities cited in support thereof, are not given.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Josiah F. Beck died in Silver Bow county on April 28, 1909, leaving an estate consisting of real and personal property of the value approximately of $80,000. He left surviving him a widow, Agnes Beck, several nephews and nieces and the children of a deceased niece. By his will dated March 8, 1899, he gave to the widow the family home in the city of Butte, together with the household furniture, and the sum of $10,000 to be paid to her at the discretion of his executors, from time to time as her necessities might require. Among the other bequests made by the testator are the following: "To James R. and William Dickey (Dickey Brothers), now resident of Madison county, Montana, near Sheridan, I give and bequeath the sum of Three Thousand Dollars in money, less a note for Two Thousand Dollars held by me against them. * * * The foregoing conditions of my will having been complied with, by collections of money and sale of real and personal property, other than that already bequeathed, the residue, if there be any, I give and bequeath to the use and benefit of the 'Orphans' Home,' located at Twin Bridges, Madison county, Montana, to be donated to said institution, at such times as my executors may be able to fairly dispose of any property belonging to the residue of my estate." The will was duly admitted to probate by the district

court of Silver Bow county, and Anthony W. Barnard, one of the persons named as executors therein, qualified and entered upon the discharge of his duties. Thereafter, on May 12, 1909, the widow renounced the benefit of the testamentary provision made for her, and reserved the right of election to take her dower in the real estate and her share of the personal property under section 3714, Revised Codes, or, in lieu of dower, one-half of the real estate, after the payment of all just debts, under section 3716. Thereupon this proceeding was commenced by the state of Montana, through the attorney general representing the Orphans' Home and also in its own behalf, under the provisions found in sections 7670–7672 of the Revised Codes, to have ascertained and declared the rights of all persons to any part of the estate and all interests therein and to whom distribution thereof should be made. The widow and all the next of kin of the testator, as heirs at law, entered their appearance and by answer contested the validity of the residuary clause of the will, on the ground that neither the Orphans' Home nor the state of Montana has legal capacity to take as a legatee. There was also a controversy between the widow and the next of kin, as to what share of the estate, if any, they were entitled to in case the legacy to the Orphans' Home should be declared invalid, the former contending that the latter were not entitled to any share whatever. The questions involved were determined upon an agreed statement of facts. It was stipulated therein that the Orphans' Home mentioned in the will is the State Orphans' Home at Twin Bridges, in Madison county, created and established under the provisions found in Part III, Chapter IV of Article III of the Political Code of 1895, and Acts amendatory thereto, brought forward into the Revised Codes as sections 1249–1280, inclusive, and thereafter further amended by the Act approved March 4, 1909 (Laws of 1909, Chap. 73, p. 97). No question was made as to any of the other several bequests, except that it was contended by all the parties in interest, other than those mentioned as special legatees, that under the terms of the will the Dickey brothers were entitled to receive only

such balance of the $3,000 bequeathed to them as would remain after deducting the principal sum named in the note, admitted to be still due the estate, together with interest thereon up to the date of the probate of the will. The relationship to the testator of all the persons appearing as next of kin was admitted. It is not stipulated in the statement that the widow had made her election which she had reserved in the alternative, before the commencement of the proceeding. It was admitted pending final decision, however, that she had chosen the alternative accorded to her by section 3716, *supra*. It was also stipulated in open court at the time of final submission, that she was in any event entitled to a homestead of the value not to exceed $2,500, or, in lieu thereof, $2,500 in money over and above the share of the real estate accorded to her under section 3716.

Upon the agreed facts and these admissions the court ascertained and decreed: 1. That the residuary bequest to the Orphans' Home is void; 2, that the amounts of the special bequests and debts must be paid out of the real estate; 3, that the Dickey brothers are entitled to receive the sum of $3,000, less the sum of $2,000, with interest thereon to the date of probate of the will; and 4, that the widow is entitled to receive (a) one-half of all the real estate belonging to the estate at the death of the testator, or of the proceeds thereof remaining after the payment of the specific legacies and debts; (b) that out of the remainder or the proceeds thereof she is entitled to a homestead not exceeding in value $2,500, or, at her option, $2,500 in money; and (c) that she is further entitled to one-third of the personal property remaining in the hands of the executor at the date of distribution after the payment of the costs of administration. It was decreed that the next of kin were entitled to the residue of the estate *per stirpes*. After the final decision, the widow and the next of kin adjusted their controversies. Those are therefore not now involved in this case. As against the state and the Orphans' Home, the widow made her motion for a new trial. This was overruled. She has appealed from the decree and order overruling her motion. The state and the

Orphans' Home have appealed from the decree, as have also the Dickey brothers.

The appeals of the widow and the state and Orphans' Home present two questions, *viz.:* (1) Is the Orphans' Home a person capable of taking as legatee under the Act, and, if not, construing the will as manifesting an intention on the part of the testator to make the state his beneficiary, is the state capable of taking; and (2) to what share is the widow entitled? If the first of these questions is answered in the negative, it will be unnecessary to answer the second, because, as noted in the statement of facts, after the decision by the district court the widow and next of kin adjusted their controversies by stipulation, and, as stated in the brief of counsel for the widow, her appeals were taken only in order to protect her rights as against the claims made on behalf of the state.

The right to make testamentary disposition of property depends [1] entirely upon the will of the legislature. It may withhold the right altogether or impose any limitations or conditions upon it which it chooses. (*In re Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013.) A necessary postulate of this proposition is, that the legislature has the exclusive power to designate those whom the testator may make the objects of his bounty. It is the general rule in the United States that in the absence of some special disability declared by statute, any person may be a legatee or devisee. When the statute of wills, in designating those who are capable of taking, employs the word "persons," without limiting its meaning, it also includes corporations, in the absence of a prohibition in the charter. (18 Am. & Eng. Ency. of Law, 2d ed., 741; 7 *Id.* 721.) Our statute declares: "A testamentary disposition may be made to any person capable of taking the property so disposed of, except corporations other than those formed for scientific, literary, or solely educational purposes, cannot take under a will, unless expressly authorized [2] by statute." (Rev. Codes, sec. 4725.) The evident meaning of this awkwardly expressed provision is, that natural persons and corporations formed for scientific, literary or solely

educational purposes, may take through testamentary disposition, but that no other corporation may, unless expressly authorized by statute to do so. If the term "person" only had been used, the right would have been extended to any corporation capable of taking and holding property; for, though the term "person" ordinarily refers to a living human being—a natural person—the definition given it by other provisions of the Codes includes corporations as well as natural persons. (Rev. Codes, secs. 16, 6224, 8071, 8099.) The same definition is given·in each of these sections. "A corporation is a creature of the law, having certain powers and duties of a natural person." (Sec. 3805.) "Corporations are either public or private. Public corporations are formed or organized for the government of a portion of the state; all other corporations are private." (Sec. 3806.) "Private corporations may be formed by the voluntary association of any three or more persons in the manner prescribed in this Article." [Art. I, Div. I, Part IV, Title I, Chap. I, Civil Code.] (Sec. 3807.)

The State Orphans' Home does not fall within the above **[3]** definitions either of a public or private corporation. The purpose of its establishment was that it should be "a home for the support and care of orphans, foundlings and destitute children resident within the state of Montana." (Rev. Codes, sec. 1249.) In none of the provisions of the original Act creating it nor in any of the amendatory legislation do we find it clothed with any of the attributes of government. No territory is assigned over which it has jurisdiction. It cannot sue or be sued. It cannot acquire property of any character. Its governing body cannot enact by-laws. It cannot levy or collect taxes or appropriate money, or provide for its own support, or even prescribe the terms upon which children may be admitted to it. In short, it is only an instrumentality provided by the state to accomplish through the state's executive officers the purposes stated in the statute. Therefore it is not a public corporation. Nor is it a private corporation. It was not formed by the voluntary association of persons under the provisions of the Code,

*supra.* It has no charter defining its powers and capacities. In itself, and apart from the power of control and management conferred upon the executive officers of the state government by the legislation creating it, it is not endowed with power or capacity of any character. The title to the property acquired for its use is vested exclusively in the state, and whatever support it has, is by the law of its creation derived from appropriations made from the state treasury. It is not, therefore, a corporation at all. (*Weary* v. *State University,* 42 Iowa, 335.) It is not, strictly speaking, even an educational institution, for though it is made incumbent upon the board of trustees to provide common school instruction for the inmates (Rev. Codes, sec. 1261), this provision is only an incident to the main purpose for which it was established, *viz.:* "A home for the support and care of orphans, foundlings and destitute children."

In this state a private corporation may not be created by special law. (Const., Art. XV, sec. 2; Art. V, sec. 26.) If the legislature had intended by the Act to constitute the Home a private corporation, under these provisions of the fundamental law, the Act would have been void. It may be that the legislature has the power to create by special Act a public or quasi-public corporation to carry out the purposes sought to be accomplished by the institution. This course was pursued by the legislature of Kansas with reference to the State University (*State ex rel. Little* v. *Board of Regents,* 55 Kan. 389, 40 Pac. 656, 29 L. R. A. 378) ; and also in California (*In re Royers' Estate,* 123 Cal. 614, 56 Pac. 461, 44 L. R. A. 364). But that the legislature of this state had any such purpose in view in establishing the Home is not even suggested in any provision of the Act of establishment.

Counsel contend that, though the Orphans' Home cannot take, as such, yet since it was the manifest intention of the testator [4] that the state should receive the benefit of his bounty, the bequest is valid as to the state and it may take. The argument is that the state is a sovereign; that the right and capacity to take and hold property is one of the incidents of sovereignty;

and that since the Constitution does not in any way limit the state's power in this regard, it may take by donation, devise, bequest or any other mode of conveyance or transfer known to the law. It cannot be doubted that the power of the legislature is plenary, except so far as restrictions are imposed upon it by the Constitution. (*Missouri River P. Co.* v. *Steele*, 32 Mont. 433, 80 Pac. 1093.) But the question here is not the extent of the state's power, but whether the legislature in the exercise of its sovereign power, in enacting the provision of the Codes, *supra* (sec. 4725), intended to include the state among those who may take under a will. The legislature speaks for the sovereign. Its expressed will is, within the limits of the fundamental law, that of the sovereign itself. The purpose of legislation is to [5] prescribe rules to regulate the conduct, and protect and control the rights, of the citizen. Therefore, the rule to be observed in the construction of statutes is, that the state is not included by general words therein creating a right and providing a remedy for its enforcement. In *United States* v. *Hoar*, 2 Mason, 314, Fed. Cas. No. 15,373, 26 Fed. Cas. 329, Mr. Justice Story said on this subject: "In general, Acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary, force to the government itself. It appears to me, therefore, to be a safe rule founded in the principles of the common law that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the Act." (See, also, Endlich on Interpretation of Statutes, sec. 161; *Mayrhofer* v. *Board of Education*, 89 Cal. 110, 23 Am. St. Rep. 451, 26 Pac. 646, and cases cited; *In the Matter of the Will of Fox*, 52 N. Y. 530; *United States* v. *Fox*, 94 U. S. 315, 24 L. Ed. 192; *McBride* v. *Board of Commrs. of Pierce County*, 44 Fed. 17.) The rule applies also to laws which are merely enabling in character, in that they confer rights not theretofore possessed. In the *Matter of the Will of Fox, supra*, the court construed a statute containing provisions

similar to those in our own statute, *supra,* but dealing with devises of real estate only. The statute provided: "Such devise may be made to every person capable by law of holding real estate, but no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter or by statute to take by devise." The question at bar was whether a devise to the United States fell within the purview of the statute. It was held that the word "corporation," as used therein, referred to corporations created under the laws of New York, and that without further definition it could not be held to embrace a state or nation. The court said further: "In construing a statute, words are to be taken in their ordinary sense, unless, from a consideration of the whole Act, it appears that a different meaning was intended. The word 'person' does not, in its ordinary or legal signification, embrace a state or government; and there is no ground to justify such an extension of its meaning in construing the statute relating to devises. The gift in the will in question to the United States cannot be sustained as a devise of land, for the reason that the testamentary capacity given by the statute extends only to devises to natural persons, and such corporations as are authorized by the law of the state to take by devise." In affirming the judgment in this case, under the title *United States* v. *Fox, supra,* the supreme court of the United States said: "The term 'person' as here used applies to natural persons, and also to artificial persons—bodies politic deriving their existence and powers from legislation,— but cannot be so extended as to include within its meaning the federal government. It would require an express definition to that effect to give it a sense thus extended." Adopting the construction given to the statute by the New York court, it also held that the word "corporation," as used in the statute, applied only to artificial persons created under the laws of the state.

Recurring to the proposition that the right of testamentary disposition is within the exclusive control of the legislature, and the necessary postulate therefrom that it may also designate the classes of persons who may take under such a disposition, we

must conclude that there is no person, within the meaning of the statute, capable of taking the bequest in question. It is therefore void.

The attorney general argues, however, that the Constitution recognizes the right of the state to acquire property by testamentary disposition. He cites section 1 of Article XVII, and section 2 of Article XI of this instrument, which, so far as pertinent, read as follows: "All lands of the state that have been, or that may hereafter be granted to the state by Congress, and all lands acquired by gift or grant or devise, from any person or corporation, shall be public lands of the state, and shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised." (Sec. 1, Art. XVII.) "The public school fund of the state shall consist of * * * all unclaimed shares and dividends of any corporation incorporated under the laws of the state, and all other grants, gifts, devises or bequests made to the state for general educational purposes." (Sec. 2, Art. XI.)

It is argued that these provisions imply capacity in the state to take, by testamentary disposition, property of any character. In the abstract this is true. It will be observed, however, that neither of these provisions deals with the subject of the capacity of the state to acquire property. Both are limitations upon the power of disposal by the legislature. They also embody an express injunction upon the legislature that the property with which they deal must be devoted exclusively to the purposes for which it has been or may be acquired. The state, as a sovereign, has the capacity to acquire property by any means. Yet in expressing its will as to testamentary disposition of property in the statute *supra,* it has not put itself in the class of those who may acquire property by such mode of transfer. In other words, it has not given its consent to be the beneficiary of any citizen.

Section 14 of the Act of 1909, *supra,* declares: "All donations, grants, gifts, or devises made to any of the institutions named

herein shall be made to such institution in its legal name, and if made to any officer or boards of such institutions, the same shall be immediately transferred by such board or officer to such institution.'' It is argued that this provision impliedly puts the state within the class of those who may take. It is sufficient to say in this connection that the Act itself deals exclusively with the subject of control of the state institutions, and does not purport to amend the provisions of the Codes on the subject of wills.

Finally, it is said that the Orphans' Home may take as an educational, charitable or benevolent society, under section 4762, Revised Codes. Considerable space is devoted in the briefs of counsel to a discussion of the question whether this section, enacted, as it was, 1893 as an amendment to section 473 of the Second Division of the Compiled Statutes of 1887, and brought forward in the Codes of 1895 and 1907, respectively, does not entirely supplant section 4761, which has also been brought forward in the different Codes. We shall not undertake to determine this question. For present purposes it is not a material inquiry whether one or both of the sections must be looked to, to determine what the law is on the subject with which they deal. The purpose intended to be accomplished by them is not to establish charitable uses as they were known at common law, even though both recognize them, nor to enable any particular character of persons to accept a trust made by devise or bequest, but, as was pointed out by the supreme court of California, in *Estate of Hinckley*, 58 Cal. 457, they were enacted ''to prevent improvident alienations or dispositions by languishing or dying persons to the disherison of the lawful heirs.'' They go no further than to impose upon the right of disposition by the testator the limitation therein prescribed.

As stated at the outset, the answer given to the first question presented renders unnecessary a discussion of the second.

The appeal of the Dickey brothers presents the question whether the court erred in decreeing that interest should be [6] charged upon their notes up to the date of probate of the

will. The language in which the bequest is couched clearly indicates that it was the intention of the testator to give to the brothers the sum of $3,000, to be paid *pro tanto* by a discharge of the indebtedness due from them upon the note. The words "less a note for two thousand dollars" would, in ordinary business transactions, have reference to the debt as a whole, and not to the sum mentioned as principal only. There is nothing to indicate that the testator intended to use them in any other or different sense. The court was therefore correct in assigning to them their ordinary meaning. (Rev. Codes, sec. 4770.) It is true that the statement of facts does not disclose the rate of interest stipulated for in the note, nor whether any interest was in fact due at the date of probate of the will. Indeed, there was no evidence before the court disclosing anything with reference to the character of the note or the amount of indebtedness represented by it, except the clause of the will itself. Nevertheless we think the decree, though indefinite, sufficiently indicates how the settlement should be made by the executor with these legatees.

The decree is affirmed as to all the appellants; as is also the order denying the widow's motion for a new trial.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH: I dissent from that part of the foregoing opinion wherein it is held that the state cannot take as residuary legatee for the use and benefit of the State Orphans' Home. I agree that the right to make testamentary disposition of property depends entirely upon the will of the legislature and that the state may withhold it altogether. Neither is the right to take by descent an inherent one. I also concur in what is said concerning the effect of our Code provisions governing the right to make a will, and of persons and corporations, as such, to take by will. But we must beware of pressing the words of the statute "to a dryly logical extreme." (*Noble State Bank* v. *Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112.)

These, and similar enactments, have no reference to the state. They were not intended to apply to that power from which the laws themselves emanate. They simply confer rights upon persons and corporations. It was entirely unnecessary to name the state in the statute. Its capacity to take has always existed and is evidenced by the constitutional and statutory provisions cited in the majority opinion. The original and ultimate right of all property, real and personal, within the jurisdiction of this state and not belonging to the United States, is in the people of the state (Rev. Codes, sec. 26). Whenever the title to any property fails for want of heirs or next of kin, it reverts to the state (Rev. Codes, sec. 27). True, the legislature speaks for the sovereign. But it is manifest that that body in enacting section 4725, Revised Codes, was not speaking of the sovereign but of individuals and certain corporations, because the original and ultimate right of all property was in the sovereign. The state was creating and conferring rights, not curtailing them. In my judgment, the commonwealth, in addition to its sovereign rights, has every other right enjoyed by any natural or artificial person, and it cannot be held to have renounced any of them without its express consent. The supreme judicial court of Massachusetts, in *Dickson* v. *United States,* 125 Mass. 311, 28 Am. Rep. 230, held that in the absence of a prohibitory statute, the United States could take by devise. In *United States* v. *Fox,* 94 U. S. 315, 24 L. Ed. 192 (cited in the majority opinion), it was held that a devise of real estate to the government of the United States was void for the reason that a law of New York, similar to ours, allowed real estate to be devised only to natural persons and certain corporations. In my opinion, this decision is founded in a fundamentally erroneous notion of the purpose and effect of the state statute. With due respect for so high authority, it seems to me altogether unreasonable to declare that a sovereign state, holding the original and ultimate right of all property, cannot take by will because, forsooth, it has graciously allowed certain of its citizens (practically all of them) to take in like manner.

OPINION ON MOTION FOR REHEARING.

. (Submitted February 24, 1912. Decided March 13, 1912.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

A motion for a rehearing of this case, heretofore submitted, was denied. The announcement was then made that at a convenient time additional reasons confirming the action of the majority of the court would be prepared and filed.

"In this state there is no common law in any case where the law is declared by the Code or other statute." (Rev. Codes, sec. 6213.) "The Code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice." (Rev. Codes, sec. 6215.) If these provisions are to be given the meaning which their words clearly import, whenever the legislature has expressed its will upon any subject, the duty is enjoined upon the courts to accept its expression as the law on that subject and determine controversies arising with respect to it accordingly.

It cannot be doubted that section 4723, Revised Codes, if it is to be taken as the law of this state declaring who has legal capacity to make a disposition of property by will, as it must be, cannot be extended by construction so as to include any person other than those mentioned in it. So, also, by the same rule, section 4725 cannot be construed to include any person, natural or artificial, among those who have the capacity to take under a will, other than those mentioned. Therefore, the result reached in the original decision, as to the capacity of the state to take under the Beck will, is the only logical one; otherwise it was incumbent upon this court to say that, although the legislature has declared its will on the subject and has designated by specific mention the persons, both natural and artificial, as the term "person" is defined in the Codes, who may take, section 4725 is only a part of the law on the subject with which it deals and that the court must enact the rest of it. This the majority of the court was disinclined to do. After

further consideration of the subject we have been confirmed in the conclusion as first announced. Section 4725 is the only provision found in the Codes containing a declaration on the subject. It was brought forward into the Civil Code of 1895 as section 1722, from the Compiled Statutes of 1887 (Second Div., Comp. Stats. 1887, sec. 437), which embodied the statute law of the territory and were continued in force by the Constitution (Constitution, Schedule 1); and although the Constitution, in the provisions cited in the original opinion, implies that the convention had in mind the idea that benevolent citizens might make devises and bequests to the state or to some of the state educational institutions, the section, exclusive in its character, has been preserved in force as the expressed will of the legislature. As was there pointed out, these provisions do not declare a capacity, but merely limitations upon the power of disposal by the legislature.

There are also other considerations which sustain our conclusion. The original Act creating the State Orphans' Home provided that "the funds and revenues for the establishment of said Home * * * shall be appropriated and apportioned in such manner as the legislative assembly shall provide." (Session Laws 1893, p. 189.) In none of the amendatory legislation do we find any change in its constitution nor any other provision for its maintenance. Taking the other institutions of the state in order, we find the legislation providing for their establishment, control and legal capacity far from uniform. This lack of uniformity is particularly noticeable when we come to examine the Acts of establishment, with reference to the powers conferred upon the various boards intrusted with the immediate control.

The state board of education consists of the governor, the superintendent of public instruction, the attorney general, and eight citizens appointed by the governor, by and with the consent of the senate, each of whom holds his office for four years. (Rev. Codes, sec. 642.) The state treasurer is the treasurer of the board. (Rev. Codes, sec. 645.) The control of the State University is vested in this board. (Const., Art. XI, sec. 11; Rev.

Codes, secs. 667, 670.) While not specifically authorized to accept gifts, devises and bequests for the benefit of the University, the implication is that the board may do so. Any person contributing not less than $15,000 may have the privilege of endowing a professorship, or any department of it, subject to the power of the board to designate the name and object of the gift. (Rev. Codes, sec. 678.) All such contributions to the University as are derived from public or private bounty must be devoted exclusively to the specific object for which they shall have been designated by the donor. (Rev. Codes, sec. 679.)

The Act creating the State School of Mines declared it to be a body corporate, with power to sue and be sued, and to take and hold real and personal property by gift, bequest, devise or purchase from the state, and dispose of the same when authorized by law to do so. (Laws 1893, p. 176; Rev. Codes, sec. 691.) The government of it was by the Act vested in a board of trustees, consisting of five members appointed by the state board of education. (Rev. Codes, sec. 693.) By the Act of March 4, 1909 (Laws of 1909, Chap. 73), the control of the institution was vested in the state board of education, the provision for the appointment of the board of trustees being repealed. It may be remarked that all of the state educational institutions are declared by this Act to be under the exclusive control of this board. The control of the funds belonging to them, from whatever source they may have been, or may hereafter be, derived is also vested in the board with power to authorize and regulate all expenditures by any of them. For each is provided a local executive board, which has charge of its financial affairs, but it is merely the agent of the state board. Whether this Act destroyed the corporate character of the school of mines is an inquiry which is not pertinent here; but the Act otherwise puts it upon the same footing as the other state institutions.

By the original Act creating the Agricultural College and establishing the Experimental Station at Bozeman, in 1893 (Laws 1893, p. 171), the state board of education was constituted the controlling body. The board was authorized to accept

gifts of land and money to aid in the purchase of a site.    (Laws 1893, p. 171, sec. 2.)    By various Acts since that time the legislature has authorized the establishment of experimental substations for horticultural and agricultural purposes.    In one instance the governor and secretary of state were especially authorized to make use of state lands for the use of a substation (Rev. Codes, secs. 757, 759) ; in others, either the local executive board of the institution was specially authorized to accept lands by donation (Rev. Codes, sec. 756), or the special authority to do so was conferred upon the governor or secretary of state. (Rev. Codes, secs. 763, 765.)    In the latter instance the college itself was also specially authorized to accept money and materials to aid the enterprise.

The Act establishing the Normal School at Dillon especially authorized bequests to be made to the state board of education for the benefit and exclusive use of the school.    (Laws 1893, p. 180.)    By an Act approved February 25, 1903 (Laws 1903, Chap. 29, sec. 2; Rev. Codes, sec. 776), the board was again authorized to accept bequests and donations for the use and benefit of the school.

In the Act establishing the State Deaf and Dumb School at Boulder, it is declared that ''all donations, gifts, devises or grants which shall hereafter be made by any person or corporation to said school, shall rest [vest?] in the state of Montana for the use and benefit thereof.''    By later legislation the name of the school was changed to Montana School for Deaf and Blind (Session Laws 1903, Chap. 10; Rev. Codes, sec. 1155).    Originally under the control of the state board of education, its control was by this Act vested in a board of trustees, until by the provisions of the Act of 1909, *supra*, it was again vested in the state board of education.    The provision of the original Act touching devises and bequests has remained in force and unchanged until the present time.    (Rev. Codes, sec. 1182.)

The State Reform School, at Miles City, as originally established, was put under the control of a board of trustees appointed by the governor.    The board was specially authorized

"to receive in the name of the state any and all donations, gifts and contributions to the said school whether in money, labor, material or supplies." (Laws 1893, p. 183.) The Act of 1909, _supra_, left this provision undisturbed. (Rev. Codes, sec. 9784.)

The Soldiers' Home, located at Columbia Falls, was established by an Act approved March 15, 1895. (Rev. Codes, sec. 1283.) The general supervision and government of it was vested in a board of managers, consisting of five members appointed by the governor (Rev. Codes, sec. 1283); its government remains as it was first established. The board is expressly empowered to accept, on behalf of the state, "donations of land, money or other valuables by gift, bequest or otherwise."

The state board of land commissioners, consisting of the governor, superintendent of public instruction, the secretary of state, and the attorney general, is authorized to accept, in the name of the state, by deed of sale, or gift, or by operation of law, any lands of whatsoever nature for the benefit of the common schools or for any specific purpose which is designated by the "grantor or testator." (Rev. Codes, sec. 2193.)

These various specific provisions conferring the power to take upon the different agents named indicate one of two conclusions: either that the legislature in enacting them deemed them necessary as enabling provisions, in view of the exclusive character of section 4725, or that it had no intelligent comprehension of the purposes it was seeking to accomplish. For if, notwithstanding this provision, the state must be presumed, by reason of its sovereignty, to possess the general capacity to take, without any declaration on the subject, all of these special provisions referred to are entirely meaningless. Any devise or bequest to the state, for the use of any of the institutions, would be valid without them. But if we assume, as we have, that the legislature, in enacting section 4725, intended to lay down an exclusive rule, and that the special provisions referred to are to be deemed the exceptions which have been made from time to time, the Act of the legislature is made intelligible and wholly consistent with the idea that the state has so far with-

held its consent to be put upon the same footing as other persons who may take under a will. For these additional reasons we think the conclusion reached in the original opinion the correct one.

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH: I am still firmly of opinion that an erroneous conclusion has been reached in this case. I believe a majority of the court has adopted a theory that is fundamentally wrong. Precedents can have no application under such circumstances. The fact that the legislature has made so many crude, perhaps unnecessary, and possibly abortive attempts to create agencies by which the establishment and control of the various educational institutions of the state are to be accomplished, carried forward and maintained, is an additional evidence to me that the law-making body has always recognized that the state of Montana is the source of all power, all property, all capacity; and in the exercise of these attributes of sovereignty it has been deemed wise and expedient from time to time to establish administrative bodies through which its bounty may be exercised. But to hold that certain educational institutions can derive legal capacity from a source which is itself destitute of such capacity; or that power can flow from a fountain-head where no power resides; or that the state can bestow that which it does not itself possess, is, in my judgment, to arrive at an obviously illogical and irreconcilable conclusion.