No. 79-87

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

-------------------------------

IN THE MATTER OF THE ESTATE OF
JESSE KINYON, Deceased.

-------------------------------

Appeal from:   The District Court of the Fourteenth Judicial
               District, In and for the County of Meagher,
               The Honorable LeRoy McKinnon, Judge presiding.

Counsel of Record:

      For Appellant:

            Galt and Swanberg, Helena, Montana
            Robert F. Swanberg argued, Helena, Montana

      For Respondent:

            Gordon R. Hickman, Harlowton, Montana
            John V. Potter, White Sulphur Springs, Montana
            Glen Neier argued, White Sulphur Springs,
            Montana

-------------------------------

                              Submitted:  June 17, 1980
                               Decided: JUL 22 1980

Filed:  JUL 22 1980

<!-- signature --> Thomas J. Kearney
                                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from an order entered in District Court, Fourteenth District, Meagher County, declaring section 91-142, R.C.M. 1947 (now section 72-11-334, MCA) the Montana mortmain statute, unconstitutional.

Jesse Kinyon died testate on January 26, 1971, leaving no surviving spouse, issue, parents, or other relatives of a closer degree of kinship than nieces and nephews. After contest (see Wallin v. Kinyon Estate (1974), 164 Mont. 160, 519 P.2d 1236) his Will, dated January 18, 1971 was admitted to probate. The Will named Jennie L. Minder as executrix. Kinyon bequeathed the sum of $1,000 each to three of his surviving eight nieces and nephews, and $2,000 to a surviving cousin. The balance of Kinyon's $29,568.73 estate was disposed of by paragraph five of the Will which provides:

> "All of the rest, residue and remainder of my estate, I give and bequeath to the Trustees of the Mayn Cemetery District of Meagher County, Montana, for the following uses and purposes: First, I direct that the said Trustees shall expend such funds as may be reasonably required to fence, restore and maintain the burial grounds near Fort Logan in Meagher County, Montana, to the extent that it is possible and practical; Second, the balance of said bequest, if any funds remain shall be used by the Trustees of said Cemetery District to improve, care for, maintain and enlarge the Mayn Cemetery near White Sulphur Springs, Meagher County, Montana or for such other purposes as may be permitted by law."

Mayn Cemetery District is a public cemetery. The burial grounds at Fort Logan consists of an area wherein are now buried former residents of Meagher County including the parents of the decedent. It is not presently maintained or supported by tax funds but is a historic site visited by the general public.

After admission to probate the executrix on April 8, 1974 petitioned the court for an order construing the Will.

The petition challenged the constitutionality of the Montana
mortmain statute. Legal notice was given to all interested
parties including the state attorney general. On March 17,
1976, the District Court issued an order requiring application
of the law existing prior to enactment of the Uniform Probate
Code pursuant to authority granted to the Court under section
91A-6-102(b), R.C.M. 1947 (now section 72-1-107, MCA).
Advance distribution to beneficiaries whose bequests were
not in question was authorized by the court on January 10,
1977. After an August 27, 1979 hearing, the court concluded
the mortmain statute lacked a fair and substantial relation
to the legislative objective of the section. In addition,
the court concluded the statute made no distinctions based
upon sanity, undue influence or existence of dependents or
close relatives.

It is from this order that the heirs appeal. A stipulated
statement of facts has been filed in lieu of a transcript
with the approval of the District Court pursuant to Rule
9(d), M.R.App.Civ.P. The question for our review is whether
the District Court erred by declaring the Montana mortmain
statute unconstitutional. We hold that the District Court
did not err.

This Court recently ruled in Matter of Estate of Holmes
(1979), _____ Mont. ___, 599 P.2d 344, 36 St.Rep. 1569, that
section 91-142, R.C.M. 1947 (now section 72-11-334, MCA) the
Montana mortmain statute had been repealed by implication
due to the adoption of the Uniform Probate Code. However,
at the time of the decedent's death the statute read as
follows:

> "Restriction to devise for charitable purposes.
> No estate, real or personal shall be bequeathed
> or devised to any charitable or benevolent society
> or corporation, or to any person or persons in
> trust for charitable uses, except the same be

-3-

done by will duly executed at least thirty (30) days before the decease of the testator, and if so made at least thirty (30) days prior to such death, such devise or legacy, and each of them, shall be valid; provided that the prohibition contained in this section shall not apply to cases where not more than one-third (1/3) of the estate of the testator shall be bequeathed or devised for charitable or benevolent purposes, and provided further, that if any such devise or bequest be made in a will executed within thirty (30) days prior to such death and be for more than one-third (1/3) of the estate of the decedent, the same shall be void as to the excess over one-third (1/3), but as to that only."

The purpose of the statute was "to prevent improvident alienations or dispositions by languishing or dying persons to the disherison of the lawful heirs." In Re Beck's Estate (1912), 44 Mont. 561, 577, 121 P. 784, 789. In other words the purpose was two-fold, namely to prevent overreaching by charities and to protect the interests of relatives. We note in passing that our decision here in no way abandons these safeguards since existing law is sufficient to prevent the abuses at which the mortmain statute was directed. See section 72-3-310, MCA.

The District Court made the following specific finding:

"That the provisions of Section 91-142, R.C.M. 1947, are arbitrary, unreasonable, and lack a fair and substantial relation to the legislative object of said section; that no distinction is made between persons of sound mind or those of unsound mind; or between those having either dependents or close relatives, and those having neither dependents or close relatives; or between those being unduly influenced during terminal illness, and those who are free of outside influence, and have a clear and rational intention as to the objects of their bounty."

We agree with this conclusion. Even granting appellants' argument that the present situation does not require the application of the "strict scrutiny" test, but instead requires application of a reasonableness standard, we still find the Montana statute wholly arbitrary in that the classifications created by the statute are not reasonably related to its purported statutory objective.

-4-

"A classification 'must be reasonable', not arbitrary and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."   Reed v. Reed (1971), 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229.

The Montana statute goes beyond the legislative objective in that it applies to situations where there is no basis to assume the existence of an improper influence on a testamentary disposition.  The statute applies to all situations in which a testator makes a testamentary disposition to charity and happens to die within 30 days of such a disposition.

However, we agree with the reasoning of the Pennsylvania Supreme Court in In Re Estate of Cavill (Pa. 1974), 329 A.2d 503.  In holding the Pennsylvania mortmain statute violative of equal protection guarantees, that court stated:

"Clearly, the statutory classification bears only the most tenuous relation to the legislative purpose.  The state strikes down the charitable gifts of one in the best of health at the time of the execution of his will and regardless of age if he chances to die in an accident 29 days later. On the other hand, it leaves untouched the charitable bequests of another, aged and suffering from a terminal disease, who survives the execution of his will by 31 days.  Such a combination of results can only be characterized as arbitrary.

" . . .

"Because the statute sweeps within its prohibition many testamentary gifts which present no threat of the evils which the statute purports to minimize, it is substantially over-inclusive.  Since the statute also leaves unaffected many gifts which do present such a threat, it is also substantially under-inclusive.  We are thus compelled to conclude that it lacks 'a fair and substantial relation' to the legislative object.  Therefore, the Equal Protection Clause forbids us to give it any effect. (Citing cases.)"  Cavill, 329 A.2d at 505-06.

Although it is true that the Pennsylvania Court found the statute denied charitable beneficiaries equal protection guarantees whereas the present case concerns testators, we find no substance to such a distinction since such guarantees pertain to all persons and not just to beneficiaries.

-5-

We are aware of the cases that hold the right to devise property by will is a matter of legislative grant, In Re Noyes Estate (1909), 40 Mont. 178, 105 P. 1013, and therefore the legislature has the exclusive power to designate those whom the testator may make the object of his bounty. In Re Beck's Estate, supra, 44 Mont. at 571. However, the legislature in so designating is bound by the constitutional restrictions of nondiscrimination and equal protection. 1972 Mont. Const., Art. II, Section 4.

The decision of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices