BUTTE & SUPERIOR MINING CO., APPELLANT, *v.* McINTYRE, COUNTY TREASURER, RESPONDENT.

(No. 5,565.)

(Submitted September 8, 1924. Decided September 25, 1924.)

[229 Pac. 730.]

*Taxation—Net Proceeds of Mines—Constitution — Assessment of Property for Back Taxes—Statute not Retroactive.*

Constitution—Officers—Power of Legislature to Prescribe Duties.
    1. Where the duties of an officer are not prescribed by the Constitution the legislative assembly may prescribe them.

Same—Legislature has Plenary Power of Legislation.
    2. Except as the people have withheld it by constitutional inhibition, plenary power of legislation is reposed in the legislative assembly.

Taxation—Constitution—State Board of Equalization—Power to Assess Net Proceeds of Mines.
    3. *Held,* that the legislature could properly add powers additional to those specifically conferred by section 15, Article XII, of the Constitution, upon the state board of equalization, as it did by Chapter 237, Laws of 1921 (secs. 2089–2096, Rev. Codes 1921), by imposing upon the board the duty to assess net proceeds of mines.

Same—State Board of Equalization—Power to Assess Property for Back Taxes—Statute not Retroactive.
    4. *Held,* that Chapter 3, Laws of 1923, empowering the state board of equalization by section 11 thereof to assess property which theretofore escaped taxation, provided the assessment be made

within three years after the end of the calendar year in which the same should have been assessed, is not open to the objection that it is retroactive in its operation.

Statutes—When Deemed Retroactive.

    5. A statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions already passed, is deemed retroactive.

Taxation—Assessment of Property for Back Taxes—Statute not Retroactive.

    6. Where property escaped taxation for three years, the legal obligation of the owner to pay the taxes levied thereafter was a continuing, present and subsisting one, as imperative in the year in which the assessment was made as in the years during which it escaped assessment, and a statute relating to payment of back taxes is not retroactive but is generally considered remedial in character and prospective in operation.

*Appeal from District Court, Silver Bow County; William E. Carroll, Judge.*

ACTION by the Butte & Superior Mining Company against Howard A. McIntyre, as County Treasurer of Silver Bow County. From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted a brief; *Mr. J. Bruce Kremer* argued the cause orally.

*Mr. George Bourquin, Mr. Ed. Fitzpatrick* and *Mr. H. A. Tyvand,* for Respondent, submitted a brief; *Mr. Fitzpatrick* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff, Butte & Superior Mining Company, brought this action against the defendant county treasurer in the district court of Silver Bow county to restrain him from selling the Black Rock mine, plaintiff's property, for taxes. The court issued a restraining order and an order to show cause why an injunction should not issue against defendant. Demurrer to the complaint and a motion to quash the order to show cause were filed by defendant and after a hearing both

were sustained by the court. Judgment followed in defendant's favor, from which plaintiff has appealed.

From the record it appears that for approximately eleven years prior to the year ending May 31, 1920, the plaintiff operated the Black Rock mine which lies wholly within Silver Bow county, and during each year made the return to the taxing authorities required by law and paid the taxes assessed upon the net proceeds of the ores mined. During that time it paid net proceeds taxes amounting in the aggregate to $554,666.27, which included $100,629.22 representing the net proceeds of ores which were adjudged to be the property of others than itself. For the year ending May 31, 1920 (returns are made for the year beginning June 1 and ending May 31; sec. 2563, R. C. 1907; sec. 2089, R. C. 1921), the plaintiff made return that instead of showing a profit for that year its operations showed a deficit which came about in this way: The gross yield of ores of the Black Rock mine for that year were $6,787,783.48. The deductions permitted by section 2565, Revised Codes of 1907, then in force, amounted to $5,601,537.68. During the year plaintiff was compelled to pay to the Clark-Montana Realty Company and the Elm Orlu Mining Company the sum of $2,719,379.73 on account of ores which the plaintiff had extracted from the properties of those companies during the years 1912 to 1919, and for which it had made return to the taxing authorities and paid taxes during those years. In its return for the year ending May 31, 1920, the plaintiff added that sum of money, $2,719,379.73, under the head "Cost of Ore Purchased" to the statutory deductions and thereby there was shown a deficit of $1,533,133.93. Without deducting the item "Cost of Ore Purchased" a net profit of $1,186,245.80 would have been shown.

The assessor of Silver Bow county and the state board of equalization as then constituted permitted the deduction. A proceeding resulted in which George Bourquin as county attorney of Silver Bow county and as a taxpayer sought from the district court of Silver Bow county a writ of mandate to com-

pel the county assessor and the state board of equalization to assess the net proceeds of mines of the Butte & Superior Mining Company. The district court sustained motions to quash interposed by the assessor and the board and dismissed the action. The relator then appealed to this court. (*State ex rel. Bourquin* v. *State Board of Equalization*, 67 Mont. 340, 215 Pac. 667.) Upon consideration we decided the Butte & Superior Mining Company could not lawfully make the deduction of $2,719,379.93 as for ores purchased, in addition to the deductions specifically allowed by statute; neither did the state board of equalization have power to authorize any such deduction. The case was reversed and remanded to the district court, with direction to overrule the motion to quash which had been interposed by the state board.

In the meantime the people adopted the amendment to section 15 of Article XII of the Constitution and the legislative assembly enacted Chapter 3 of the Laws of 1923, which was approved February 2, 1923. The governor thereupon appointed J. W. Walker, O. A. Bergeson and A. J. Violette members of the state board of equalization; they qualified, and thereafter were substituted as parties defendant in *State ex rel. Bourquin* v. *State Board of Equalization* then pending in the district court of Silver Bow county, whereupon a writ of *mandamus* was issued by that court directing the "said substituted board and the members thereof to convene and consider the assessment of plaintiff herein; thereafter, and on or about the 8th of December, 1923, a notice was served upon plaintiff by said board of equalization." The notice advised the plaintiff that the state board of equalization, pursuant to a resolution adopted by it on December 8, 1923, "intends and proposed to determine and assess the net proceeds yielded to you, the Butte & Superior Mining Company, for the year ending May 31, 1920, on the Black Rock mine, situated in Silver Bow county, state of Montana, operated by you, at the sum of $1,186,245.80 as property having been omitted from and having escaped taxation for the year 1920, all of which more

fully appears in the resolution of said board hereto attached
and made a part hereof.''

After a hearing on December 21, 1923, at which plaintiff's
representatives appeared and were heard the board ordered
the county treasurer of Silver Bow county to enter against the
plaintiff in the book called ''Assessment Roll of Net Proceeds
of Mines'' an assessment of net proceeds for the sum of
$1,186,245.80, as property having been omitted from assess-
ment and taxation in Silver Bow county for the year 1920.
The county treasurer, as directed, entered upon the tax-rolls
against the plaintiff the sum of $53,944.49, as and for the net
proceeds of mines tax for the year ending May 31, 1920.
Claiming that the tax had become delinquent together with
penalties, interest and costs accruing, the defendant caused to
be published a notice that the property of the plaintiff would
be sold for the payment thereof, unless the taxes were paid
prior to the twenty-second day of January, 1924. Then the
plaintiff commenced this action, as is above narrated.

The plaintiff denies the power of the state board of equaliza-
tion to assess the net proceeds of mines, challenges the right
of the board to assess any property lying wholly within a
county, asserts that in any event the board had no right to
make the assessment as for ''omitted property'' under Chapter
3 of the Laws of 1923.

1. Plaintiff insists that under the Constitution the primary
power to assess property lying wholly within a county rests
solely with the assessor; that the state board of equalization
under the Constitution has only the power to change, increase
or decrease the assessor's valuation. While these precise ques-
tions have not been decided by this court it has passed upon
others closely akin.

In *Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac.
1093, it was held that the legislative assembly was acting
within its authority in creating a board of appraisers in each
county for the purpose of fixing valuations of real property
as a basis for assessment; that the assessor did not have exclu-

sive power to do so. It was pointed out that while the Constitution (Art. XVI, sec. 5) provides for an assessor in each county it does not define any of his duties. When the duties [1] of an officer are not prescribed by the Constitution the legislative assembly may do so. That body has the right to prescribe the manner in which property shall be assessed, and by what authority, unless the Constitution makes provision otherwise.

Except as the people have withheld it by constitutional [2] inhibition, plenary power of legislation is reposed in the legislative assembly. (*Missouri River Power Co.* v. *Steele, supra; State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697; *The Veto Case,* 69 Mont. 325, 222 Pac. 428.)

By the provisions of section 16 of Article XII of the [3] Constitution: "All property shall be assessed in the manner prescribed by law except as is otherwise provided in this Constitution. The franchise, roadway, roadbed, rails and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization. * * * " Exclusive power to assess the specific property named is vested in the state board of equalization; as to that power the legislature may not detract, but as to the assessment of all other property (not otherwise expressly provided for in the Constitution) the legislature has plenary power. In matters relating to the assessment of property it may impose additional duties upon the state board of equalization. In other words, in conferring specific powers upon the board by the provisions of section 15 of Article XII of the Constitution the people simply have named certain powers which the legislature may not take away; but by naming certain express powers it was not intended to prohibit the legislature from adding others. Such is the effect of the holding in the well-considered case of *State* v. *Board of Equalization, supra,* which settled the question as to the power of the legislature to authorize the board to make original assessments of

inter-counties property other than railroad property. The court affirmed the well-known principle that in such case "the inquiry is not whether the power for a particular enactment is to be found in express terms in the Constitution, but whether there is anything in that instrument which forbids the legislation."

By the provisions of section 3 of Article XII of the Constitution, "the annual net proceeds of all mines and mining claims shall be taxed as provided by law." As the Constitution has not designated the officer or agency by which such net proceeds shall be assessed we conclude that the legislature had the authority to confer upon the state board of equalization the power to assess the same. (*State* v. *State Board of Equalization, supra.*) This power is set in motion by the enactment of Chapter 237, Laws of 1921, sections 2089–2096, Revised Codes of 1921.

2. By the provisions of section 15 of Article XII, as originally adopted, the governor, secretary of state, state treasurer, [4] state auditor and attorney general constituted the state board of equalization. The duties of the board were "to adjust and equalize the valuation of the taxable property among the several counties of the state"; and to "perform such other duties as may be prescribed by law." (Const., Art. XII, sec 15.) By an amendment adopted in 1916, the specified duties of the state board were extended. The section was again amended in 1922. By its terms "the state board of equalization shall be composed of three members who shall be appointed by the governor, by and with the advice and consent of the senate." The following express powers are given: "The state board of equalization shall adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; supervise and review the acts of the county assessors and county boards of equalization; change, increase, or decrease valuations made by county assessors or equalized by county

boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers. Said state board of equalization shall also have such other powers, and perform such other duties relating to taxation as may be prescribed by law.''

Following this amendment the legislative assembly enacted Chapter 3, Laws of 1923. Section 11 of the Act provides that: ''Whenever the state board of equalization shall, in any year, discover that any taxable property of any person has not been assessed in such year, or that it has been omitted from taxation during any previous year or years, the state board may assess the same for such year or for such previous years.'' Then follow modal directions not necessary to note here. The section concludes: ''And provided further that all assessments of omitted property must be made within three years after the end of the calendar year in which the same should have been assessed.'' It was under this section that the state board acted in making the order of December 21 which caused the defendant treasurer to proceed against the plaintiff.

Counsel for plaintiff say, if it be conceded the state board has the power to assess net proceeds of mines in a proper case it did not have the right to do so in this instance; they say the language of the constitutional amendment implies nothing but prospective action; as the statute is not expressly declared to be retroactive it must have prospective operation only; but by the action of the board the law is made retroactive in effect; therefore all the board's acts ''relating back beyond the date of its creation and its being empowered, are null and void,'' save such acts as are referred to in section 7 of Chapter 3 under the head of ''Continuity of Action of Former Board.'' It is conceded that the board's order is not based upon the provisions of section 7.

It is true that in 1920 it was the duty of the assessor of Silver Bow county to assess the net proceeds of the Black Rock

mine and no other then had such power; also that after the power was conferred upon the state board in 1921 it did not assess the net proceeds. The property thus escaped taxation. It was omitted from taxation during the years 1920, 1921, 1922 and 1923, until after the decision of this court in the *Bourquin Case, supra,* and until action was taken by the present state board as is above set out.

Ever since 1891 we have had a statute relating to property which has escaped assessment; beginning with the Codes of 1895 it has read as follows: "Any property discovered by the assessor to have escaped assessment may be assessed at any time, if such property is in the ownership or under the control of the same person who owned or controlled it at the time it should have been assessed." (Sec. 2034, Rev. Codes 1921.) This statute, say counsel for plaintiff, was in force in December, 1923. They say it was then the duty of the assessor to assess the net proceeds of the Black Rock mine, and so by what right does the state board attempt to do so?

Whether the assessor had the right to assess the omitted property in 1923 we need not now decide. The inquiry is not as to the power of the assessor but of the state board, and that the board had the power there is no doubt. The statute confers it affirmatively. (Sec. 11, *supra.*)

The intention of the people to confer amplified power upon the state board of equalization by the amendment of 1922 is noteworthy. A mere casual inspection of the section as it appeared originally, as amended in 1916, and as amended in 1922, confirms the statement. The concluding sentence of the 1922 amendment: "Said state board of equalization shall also have such other powers, and perform such other duties relating to taxation as may be prescribed by law," certainly indicates the intention of the electorate to permit the legislature to entrust the board with comprehensive powers respecting taxation.

But does the Act operate prospectively only, or is it retroactive in its operation? Section 3, Revised Codes of 1921, pro-

vides: "No law contained in any of the Codes or other statutes of Montana is retroactive unless expressly so declared." This [5] is but a rule of construction. A statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions already past, is deemed retroactive. (*Sturges* v. *Carter*, 114 U. S. 511, 29 L. Ed. 240, 5 Sup. Ct. Rep. 1014; *The Society for Propagating the Gospel* v. *Wheeler*, Fed. Cas. No. 13,156, 2 Gall. 139; *City of New Orleans* v. *Railroad Co.*, 35 La. Ann. 679; *Crane* v. *Cox*, 18 N. M. 379, 157 Pac. 589.) The operation of section 11 of Chapter 3 does not affect the plaintiff in any of those particulars; it does not take away or impair a vested right, create any new obligation, impose any new duty or attach any new disability in respect to transactions already past.

In contemplation of our law it is the duty of every citizen [6] to return his property for taxation and to pay the taxes levied upon it. It was the obligation of the plaintiff to return this property for assessment in 1920, and to pay taxes thereon. That was settled in the *Bourquin Case*. These taxes are just as much due now as they were in the year 1920. The legal obligation to pay is present and subsisting. The duty to pay is a continuing present obligation just as imperative to-day as it was in 1920. (*Georgia R. R. Co.* v. *Wright*, 124 Ga. 596, 53 S. E. 251.)

In *Sturges* v. *Carter*, *supra*, the supreme court of the United States had under consideration an Act of the state of Ohio (Laws 1878, p. 456, tit. 13) which authorized a tax auditor to go back for a period of four years to correct false returns, and the Act was held not retroactive under the Constitution of Ohio (Art. II, sec. 28), which provided that "the general assembly shall have no power to pass retroactive laws." The court said: "In our opinion, no right of the taxpayer was invaded by the Act of 1878. His investments in bonds and stocks were subject to taxation; the taxes upon such

investments were due to the state, and the Act of 1878 merely provided a method by which the taxes might be assessed and collected in spite of the annual settlements made by the auditor. It gave a new remedy to the state for enforcing a right which it had all the time possessed, namely, the right to the taxes upon property liable to taxation. * * * The Act of 1878 took away no vested right of the taxpayer, it imposed upon him no new duty or obligation, and subjected him to no new disability in reference to past transactions." After citing authorities, the court said: "The authorities cited are conclusive against the contention that the legislation under review is retroactive."

A statute is not invalid on the ground that it is retroactive because it relates to the assessment of taxes upon property which has escaped taxation (Cooley on Taxation, 4th ed., sec. 521); on the contrary, such a statute generally is considered remedial in character, and prospective in operation. (*Sturges* v. *Carter, supra; State* v. *Pors,* 107 Wis. 420, 51 L. R. A. 917, 83 N. W. 706; *Crane* v. *Cox, supra; State* v. *Baldwin,* 62 Minn. 518, 65 N. W. 80; *Gager* v. *Trout,* 48 Ohio St. 89, 26 N. E. 1013; *City of New Orleans* v. *Railroad Co., supra; Galusha* v. *Wendt,* 114 Iowa, 597, 87 N. W. 512; *State ex rel. Hammer* v. *Vogelsang,* 183 Mo. 17, 81 S. W. 1087.)

Both the form and purpose of section 11, *supra,* are addressed to regulating and directing the conduct of the board in the assessment of omitted property, not to declaring rights or obligations or commanding conduct of those who omit to pay their taxes. Thus viewed, the statute is clearly prospective. It does not seek to regulate or modify the effect of any act or acts already done, but to direct the doing of acts in the future. (*State* v. *Pors, supra.*)

No question as to how the sum of $53,944.49 was made up by the defendant has been presented.

None of the contentions urged by plaintiff can be sustained. The judgment is affirmed.

*Affirmed.*

Associate Justices Holloway, Galen and Stark concur.

Mr. Justice Rankin, being disqualified, did not hear the argument and takes no part in the foregoing decision.