FRED C. PLATH, C. H. BARNEY AND A. A. HEALOW, COUNTY COMMISSIONERS FOR YELLOWSTONE COUNTY, MONTANA, PLAINTIFFS AND APPELLANTS, *v.* HI-BALL CONTRACTORS, INC., A MONTANA CORPORATION, DEFENDANT AND RESPONDENT.

No. 10175.
Submitted April 13, 1961. Decided June 12, 1961.
Petition for Clarification of Opinion Denied July 18, 1961.
362 P.2d 1021

William J. Speare, County Atty., C. W. Jones, Deputy

County Atty., Billings, for appellants. C. W. Jones argued orally.

Anderson, Symmes, Forbes, Peete & Brown, Billings, for respondent. Jerome Anderson, Billings, argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the Yellowstone County Commissioners from the judgment of dismissal after an order of the district court sustaining a demurrer to their complaint. The Commissioners had filed a complaint seeking a permanent injunction against the defendant Corporation to restrain it from continuing alleged unlawful activities under a certain county zoning ordinance.

The complaint, after alleging the status of the parties, set up sections 11-2701 through 11-2710, 11-3830, 11-3852 and 11-3854, R.C.M. 1947, and other acts related thereto, all of which statutes concern the zoning of lands. The complaint then alleged that in accordance with a "Master Plan" a resolution was passed on December 31, 1958, which resolution resulted in a zoning ordinance regulating and restricting the use of certain undescribed land.

The complaint alleged that the defendant's real property was located within an area subject to the regulations and restrictions of the zoning ordinance and the Master Plan, which area was designated as "R.S. — Residential-Suburban".

It was then alleged that the defendant Corporation had moved certain personal property onto its real property in violation of zoning restrictions and that a number of the owners of real property had petitioned the appellant Board of County Commissioners to take action to prevent the alleged violation of zoning restrictions.

To the complaint the defendant demurred on the general grounds that the complaint failed to state facts sufficient to

constitute a cause of action, and further upon certain constitutional grounds which were set forth.

The court sustained the demurrer and gave its reasons in a memorandum as follows:

"Memorandum

"The foregoing Order does not in any way relate to the validity of zoning within the City of Billings.

"Irrespective of the desirability of planning and zoning regulations outside the City of Billings, such regulations can be of no effect because the board of county commissioners, unlike the city council, does not possess the legislative powers which are the distinguishing characteristic of municipalities as compared to counties. See Hersey v. Neilson, 47 Mont. 132, 131 P. 30; State ex rel. City of Missoula, v. Holmes, 100 Mont. 256, 47 P.2d 624, 100 A.L.R. 581. In plaintiffs' brief the existence of this distinction is conceded, but it is argued that in matters of zoning the county acts in an administrative or ministerial capacity rather than in a legislative capacity. No authorities are found in support of the position thus taken by the plaintiff. To the contrary, a large number of decisions will be found which uniformly support the following rules:

" 'Zoning regulations constitute the exercise or expression of a governmental function * * * Their adoption or enactment constitutes action in a legislative capacity, the performance of a legislative function, or an expression or exercise of the legislative power or authority, and not of an executive or administrative authority, although in putting the ordinance into effect the municipality acts administratively'. (Sec. 1, Zoning, 101 C.J.S. 662. Lillions v. Gibbs, 47 Wash.2d 629, 289 P.2d [203] at 205.)

"Montana does not have in its Constitution any provisions conferring legislative powers upon counties such as are contained in the Constitutions of some other states. An illustration will be found in Section 11, Article XI, of the Constitution of California, which empowers counties to make and enforce

within their limits 'all such local, police, sanitary, and other regulations as are not in conflict with general laws.' In the absence of any such Constitutional provision, boards of county commissioners and other county officers in Montana are limited in their powers to carrying into effect the general laws of the state and have no power to enact local legislation.

"Section 1, Article IV, Constitution of Montana, provides that the powers of government are divided into three distinct departments, the legislative, executive, and judicial, and further provides that 'no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.' Hence the legislature could not validly delegate legislative power to boards of county commissioners, an integral part of the executive branch of government, and the commissioners are without power to enact local legislation of the nature of the zoning ordinance in question in this proceeding.

"In addition to the foregoing, the brief of the defendant points out serious defects in Chapter 171, Session Laws of 1959, which purports in a single sentence to extend to county commissioners the right to 'assume' all the zoning powers granted to cities. Other important constitutional questions are also raised by the demurrer and the brief of the defendant. Further, the defendant has challenged the validity of the proceedings taken by the commissioners, irrespective of any defects in the law itself. Some of these additional grounds of demurrer appear to be well-taken. However, any discussion beyond that to be found in the briefs appears superfluous. The basic issue having been decided, viz., that the county commissioners do not possess the legislative authority required to enact zoning regulations, any further discussion of additional issues would add nothing of any real significance.

"Dated this 29th day of March, 1960".

The statutes here under consideration were passed as Chapter 246, Laws of 1957. Section 1, of Chapter 246, codified as R.C.M. 1947, § 11-3801, states the purpose of the act and in the concluding sentence states "that additional powers be granted *legislative bodies of cities and counties to carry out the purposes of this act.*" Emphasis supplied.

This is the crux of the entire matter since the following sections, among other things, purport to grant to *counties* legislative powers as such.

In City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539, we considered the problem of sections 16-4101, to 16-4107, R.C.M.1947, in connection with delegation of legislative power within the meaning of section 1, Article IV, the so-called division of powers section, of our Constitution. In that case we referred to the case of Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056, 1061, where we restated the rule in Montana. In the Bacus decision we held that sufficient guidelines had not been set out in the statutes there under consideration. In the City of Missoula case involving power of counties to establish zoning districts we held that there were sufficient guidelines, and, that if the statutory method of zoning were followed, the function of the county board was not legislative in character such as to violate section 1, Article IV.

In each case considered, we have looked to see whether the so-called delegation of power was *administrative* or *legislative,* in reality. This alone, of course, does not foreclose further inquiry as to due process, etc.

The Montana Constitution is not a grant but a limitation on legislative power, so that the Legislature may enact any law not expressly or inferentially prohibited by the Constitution. Evers v. Hudson, 36 Mont. 135, 92 P. 462; State ex rel. Peyton v. Cunningham, 39 Mont. 197, 103 P. 497; Billings Sugar Co. v. Fish, 40 Mont. 256, 106 P. 565, 26 L.R.A.,N.S., 973; Northern Pac. Ry. v. Mjelde, 48 Mont. 287, 137 P. 386; State v. Dodd, 51 Mont. 100, 149 P. 481; State ex rel. Corry v.

Cooney, 70 Mont. 355, 225 P. 1007; Butte & Superior Min. Co. v. McIntyre, 71 Mont. 254, 229 P. 730; Graham v. State Board of Examiners, 116 Mont. 584, 155 P.2d 956; Mulholland v. Ayers, 109 Mont. 558, 99 P.2d 234.

Article IV, § 1, of the Montana Constitution provides:

"The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Article V, § 1, of the Montana Constitution provides in part as follows:

"The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives * * *."

In Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534, this court held that Chapter 136, Laws of 1929 (R.C.M. 1947, §§ 11-2701 to 11-2709) which authorized zoning by cities was constitutional and that city ordinances of Great Falls, enacted under the authority of the statutes, were legal grants of power, the court holding that the police power of the state could be delegated to the municipality.

But, this court has continually distinguished between a municipality and a county as to their nature as governmental units. In Hersey v. Neilson, 47 Mont. 132, 131 P. 30, 32, this court was considering the constitutionality of a statute which regulated printing. This court, citing other authority with approval, pointed out that counties are instrumentalities of government and exercise the powers *delegated by the state,* and act for the state; that they have only such powers as are *expressly provided by law* or are necessarily implied by those expressed, and that legislative power over counties is supreme,

except insofar as it is restricted by the Constitution in express terms or by necessary implication. The court also stated:

"That the framers of our Constitution did not intend municipal corporations to include counties is clear, for the two terms are used to distinguish different organizations (sec. 6, Art. XVI; sec. 4, Art. XIII; People ex rel. Graves v. McFadden, 81 Cal. 489, 15 Am.St.Rep. 66, 22 P. 851). A county is a body corporate (section 2870, Rev. Codes [1907, now R.C.M. 1947, § 16-801]), so, likewise, is a school district (section 848 [Rev.Codes 1907]); but neither possesses the powers of local legislation and control which are the distinguishing characteristics of a municipal corporation. [Citing cases.]"

The court then held that the state had restricted the authority of counties in contracting for printing. It did not say that that authority might not have been delegated to the counties.

In Young v. Board of Trustees, 90 Mont. 576, 582, 4 P.2d 725, 727, this court, in speaking of the authority of school districts said:

"The beneficial title to property owned by a school district is in the state, the district holding merely as agent of the state, and therefore the state has full control of school district property. 23 Cal.Jur. 50. It follows that the Legislature, the mouthpiece of the state, may authorize its agents to do anything that is not prohibited by the Constitution of the state."

Then, in State ex rel. City of Missoula v. Holmes, 100 Mont. 256, 274, 47 P.2d 624, 629, 100 A.L.R. 581, the court considered the constitutionality of a statute which required that public buildings owned by counties and cities should be insured. The court quoted from the Hersey case, supra, and then said:

"The powers granted to a municipal corporation are of two classes. 'The first including those which are legislative, public, or governmental, and import sovereignty; the second are those which are proprietary or quasi private, conferred for the private advantage of the inhabitants and of the city itself as a legal person.' [Citing cases.] * * *

"As to the first class of powers of a city enumerated above, the power of the legislature is supreme except as limited by express constitutional prohibitions; but as to the power of the second class wherein the city is acting in a proprietary capacity, as distinguished from a governmental capacity, the theory of local government controls."

We should mention too that Article XVI, § 7, provides the manner in which a municipal government may be established in counties:

"The legislative assembly may, by general or special law, provide any plan, kind, manner or form of municipal government for counties, or counties and cities and towns * * *; provided, however, that no form of government permitted in this section shall be adopted or discontinued until after it is submitted to the qualified electors in the territory affected and by them approved."

In all of our cases, we think it has been recognized that counties are administrative or executive bodies and that the same rules apply as apply to any state agency so far as Article IV, § 1, is concerned. That is to say, that where the legislature specifically enjoins upon an agency, administrative duties within guidelines as discussed in the Bacus case and the cases cited therein, that Article IV, § 1, is not violated.

The statutes here under consideration provide as procedure to the enactment of zoning ordinances as follows:

(1) Section 11-3830 states in substance that the planning board established by the City-County Planning Board Act shall prepare and adopt a Master Plan for the development of the particular city involved, and such contiguous unincorporated areas outside the city as in the *judgment of the planning board* bears reasonable relation to the development of the city. Before exercising any authority or jurisdiction over such unincorporated area the planning board, after approval by the board of county commissioners, shall file in the office of the county clerk and recorder a map, or plat, which shall describe

and constitute the area over which the planning board shall have jurisdiction. The jurisdiction is limited to a twelve-mile radius, which is approximately an area of 450 square miles.

(2) Section 11-3833 provides that prior to the adoption of a Master Plan the planning board must give notice and hold a public hearing on the plan itself and also the proposed ordinance involved in the plan which will be used for enforcement purposes.

(3) After public hearing has been held the planning board may by resolution adopt the Master Plan and recommend the ordinance to the board of county commissioners represented on the board.

(4) Thereafter, the secretary, or a member of the board, shall present the Master Plan and the proposed ordinance to the board of county commissioners.

(5) Within sixty days after certification of the plan to the board of county commissioners the county commissioners shall either approve or disapprove the plan and the ordinances.

(6) Thereafter, by virtue of section 11-3854, the duties and powers of the zoning commission which is provided for in section 11-2706, shall be performed and carried out by the city-county planning board itself, rather than by a zoning commission established by the county, for instance, as a separate zoning board.

(7) The governing bodies of any governmental unit, under section 11-3856, such as the board of county commissioners, may provide by ordinance or resolution for the enforcement of the city-county planning act and of any regulations or ordinances made thereunder, and may provide punishment for violations thereof, and also provide civil penalties for such violations.

It is also well to know that sections 11-3836 and 11-3837 merely provide for the approval of the recommendations of the city-county planning committee by the boards of county commissioners, or in other instances, city councils, but do not

leave with those governing bodies any discretion, nor do they give to those bodies the right to view the recommendations of the city-county planning board as mere recommendations and then to adopt such ordinances and zoning laws as the individual boards or councils may see fit. Actually, the governing bodies must either accept the recommendations or not accept them, whereupon, presumably, the city-county planning board may again exert its own discretion in determining whether or not changes should be recommended. In effect, all of the actual discretion is lodged and delegated to the city-county planning board.

The foregoing recitation of the procedural provisions of the statutes in question demonstrates that the legislature was trying to do as it stated in section 11-3801 declaring the purposes of the act "that additional powers be granted *legislative bodies of* cities and *counties* * * *." That this cannot be done is clear from our discussion in the Bacus case. Further, it can be seen that this is an attempt at city-county consolidation in the field of zoning as to legislative power and is clearly violative of Article XVI, § 7, previously set out.

■ For the foregoing reasons alone we would affirm the decision of the district court, but in considering as we did in the Bacus case as to whether any of the statutes might be saved, we must also observe that in the Freeman v. Board of Adjustment case, supra, in upholding city zoning powers, this court discussed briefly the due process clauses of the constitution and found the justification for zoning laws to be within the police power asserted for the public welfare. On its face, section 11-2710 states that "all the powers relating to zoning granted to cities in the preceding sections 11-2701 through 11-2709 may be assumed by the aforesaid board of county commissioners * * *."

■ A county must derive its powers by express, direct grant from the legislature, such as we held proper in the case of City of Missoula v. Missoula County, supra.

There is much more that could be said as to reasons why these particular statutes are unconstitutional just as the district court observed in its memorandum. However, we see no reason to further elaborate.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON concur.