No. 12651

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE ex rel. ROBERT L. WOODAHL,
Attorney General of the State of Montana,
and the MONTANA DEPARTMENT OF REVENUE,

Relators,

-vs-

HERBERT F. STRAUB, JAKE H. EHRET, KENNETH
RUSTAD, As County Commissioners for Fallon County,
Montana, and Silver Roth, As County Treasurer of
Fallon County, Montana,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relators:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Dennis Lind argued, Assistant Attorney General,
Helena, Montana
George Losleban, Assistant Attorney General, appeared,
Helena, Montana
R. Bruce McGinnis argued, Helena, Montana

For Respondents:

A. W. Scribner argued, Helena, Montana
Denzil Young argued, Baker, Montana
Sandall, Moses and Cavan, Billings, Montana
Charles F. Moses argued and Ralph S. Wright argued,
Billings, Montana

For Intervenors:

Robert Brooks, County Attorney, argued, Broadus,
Montana
Carroll Blend argued, Helena, Montana

For Amici Curiae:

Richard J. Conklin, County Attorney, argued,
White Sulphur Springs, Montana
Ralph Herriott, County Attorney, argued, Hysham, Montana

---

Submitted: January 14, 1974

Filed: FEB 8 1974                    Decided: FEB 8 1974

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding brought by the Attorney General and the Montana Department of Revenue. The petition requested assumption of jurisdiction by this Court of a complaint which seeks a declaratory judgment under Title 93, Chapter 89, Revised Codes of Montana, 1947. The named defendants are the county commissioners and the county treasurer of Fallon County. On ex parte presentation the Court accepted jurisdiction; allowed the filing of the complaint; and provided for service upon the Superintendent of Public Instruction and the Clerk and Recorder of each county as the clerk of the Board of County Commissioners of each county. The Court invited participation of those interested in the outcome of this proceeding.

The essential allegations of the complaint filed by the plaintiffs are:

1. Art. X, Montana Constitution, 1972, requires the legislature to provide a system of schools.

2. Chapter 355, Laws of Montana, 1973, amends Chapter 69 of Title 75, Revised Codes of Montana, by providing a new taxing system in part for the support of public schools.

3. The tax system contained in Chapter 355 requires each county to levy a basic 40 mill tax [for both primary and secondary schools] on property in the county and if the funds raised by this tax exceed the amount needed to fund the "foundation program" in that county the excess is to be remitted to the state for deposit in the "earmarked revenue fund, state equalization aid account".

4. This surplus is to be used in combination with other funds deposited in the account to fully fund the "foundation program" in those counties not fully funded by the basic levy.

5. Chapter 355 authorizes the adoption of budgets in excess of the minimum required by the foundation program and

- 2 -

provides that if this budget cannot be fully funded by the imposition of specified additional county levies the director of the Montana Department of Revenue is to impose a statewide property tax at such a millage as will result in full funding of these deficiencies in the various school districts.

6. On August 6, 1973 in accordance with this authorization, the Department of Revenue ordered all counties to impose an additional mill levy of 12 mills.

7. On August 16, 1973, an action was commenced in Powder River County seeking to have Chapter 355 declared void.

8. In October 1973, defendant Fallon County Commissioners directed defendant Fallon County Treasurer to hold all monies collected under authority of Chapter 355 until such time as the constitutionality of that chapter was determined by the courts.

9. Pursuant to this direction the Fallon County Treasurer has refused to pay over the monies, thus creating an actual controversy.

10. This is an emergency situation since the first payment of these monies was scheduled for January 31, 1974, and normal process of law will not provide for speedy determination.

11. That only questions of law are involved.

12. That other counties have now begun to impound funds collected under authority of the Act, further aggravating the situation.

In this Court's order accepting jurisdiction, the matter pending in Powder River County was stayed.

Fallon County appeared by answer, which we shall discuss further. Powder River County, Chouteau County, Toole County, Meagher County and the Superintendent of Public Instruction appeared in various ways--intervention, amicus curiae and otherwise. This Court has been liberal in considering all matters but, as will

- 3 -

appear hereinafter, the procedural problems and certain other policy and substantive problems alluded to in various ways by brief, motion and otherwise will not need be considered herein.

Fallon County's answer to the complaint denies all of the legal conclusions of the complaint and then sets up these affirmative defenses:

a) That Chapter 355 will require Fallon County to remit substantial sums to the state for the support of school districts located in other counties.

b) That over all Chapter 355 will require 39 counties to remit taxes which be distributed to 17 counties.

c) That Chapter 355 violates Art. X, Sec. 1, Montana Constitution 1972, which requires the legislature to fully fund the school system.

d) That Chapter 355 represents an unlawful delegation of legislative authority.

e) That the tax levied discriminates against the taxpayers of Fallon County by requiring them to pay more than is required for the support of its local schools, violating both Article XIII, Sec. 1, Montana Constitution 1972, and the Fourteenth Amendment to the United States Constitution.

f) That Chapter 355 fails to set forth any reasonable standard justifying property taxation in Fallon County for support of schools in other counties.

g) That factual issues exist which require this Court to decline jurisdiction.

Even though, as respondents point out, factual issues do exist this is no bar to a consideration of the validity of Chapter 355 on its face.

Plaintiffs in the Powder River County suit raise by intervention a preliminary issue in this action. Essentially

- 4 -

intervenors assert that prior to July 1, 1973, the legislature was operating under the authority of the 1889 Montana Constitution and accordingly its acts, to be valid, must conform to the limitations contained therein even though the acts are not to take effect until after the date the new Constitution replaces the old.

While this Court has not heretofore considered this question, we have no hesitation in rejecting intervenors' proposition. While it is true that a statute, unconstitutional when it takes effect, is not resurrected by a subsequent constitutional change, State ex rel. Woodahl v. District Court, ___Mont.___, 511 P.2d 318, 30 St.Rep. 635, the instant situation differs in that the statute was passed in anticipation of an already approved constitutional change and was of no force or effect until after the new Constitution took effect.

The Georgia Supreme Court in Henson v. Georgia Industrial Realty Co., 220 Ga. 857, 142 S.E.2d 219, 223, 224, observed:

> "It is the general rule in this country that a legislature has power to enact a statute not authorized by the existing constitution of that State when the statute is passed in anticipation of an amendment to its constitution authorizing it * * *."

The rule is based on the theory that the constitutionality of the statute is to be tested at the time the statute takes effect and not at the time of passage. Neisel v. Moran, 80 Fla. 179, 85 S. 346; State v. Hecker, 109 Or. 520, 221 P. 808; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658. We agree with this view and hold that the test of a statute's constitutionality is to be made at the time it takes effect and is to be made against the constitution as it exists at the time the statute takes effect, not at the time the statute was passed by the legislature. See: Druggan v. Anderson, 269 U.S. 36, 46 S.Ct. 14, 70 L ed 151; In re

- 5 -

Opinions of the Justices, 227 Ala. 291, 149 S. 776; State v. Smith, 335 Mo. 840, 74 S.W.2d 27; Busch v. Turner, 26 Cal.2d 817, 161 P.2d 456; Galveston Ry. Co. v. Gross, 47 Tex. 428. All of these cases approved statutes passed by the legislature in anticipation of constitutional change.

Holding that the 1973 legislature could enact prospective or anticipatory legislation to become effective July 1, 1973, under the terms of the Montana Constitution 1972, we consider the constitutionality of Chapter 355 under the Montana Constitution 1972.

Respondents' memorandum of authorities considers the issues raised by its answer under three general headings:

(1)  Chapter 355 violates Article X, Sec. 1 of the Montana Constitution 1972.

(2)  Chapter 355 discriminates against the taxpayers of Fallon County by attempting to tax them for the exclusive use and benefit of others.

(3)  That factual issues exist which would justify this Court in declining to accept jurisdiction.

Because of the view the Court takes in this case, these issues can best be considered against the background of a general consideration of the state's power to levy a general property tax for educational purposes.

It is clear that the taxes imposed by Chapter 355 are state rather than local taxes.  Provision is made in Chapter 355 for three distinct levies.  First is the basic 40 mill levy for support of the foundation program.  The language of that levy is mandatory "It shall be the duty of the county commissioners of each county to levy", with the clear effect that all property within the state is levied on at the rate of 40 mills for the support of the foundation program.  The other two levies--the additional levy for deficiency in foundation program funding and the permissive levy--

- 6 -

are even more clear in their uniform statewide applicability, with the director of the Department of Revenue ordered to impose the levies on all the property in the state. It is clear that a tax imposed by state law and levied uniformly on all property within a state is a state rather than a local tax.

Once it is established that Chapter 355 is a state rather than a local tax, there remains the question of the state's power to levy a statewide property tax with the avowed purpose of providing support for education. Here, it should be recalled that a state constitution, such as Montana's, is a document of limitation rather than of grant and accordingly a statute must contravene some express or implied limitation of that constitution to be invalid. Evers v. Hudson, 36 Mont. 135, 92 P. 462; State ex rel. Peyton v. Cunningham, 39 Mont. 197, 103 P. 497; Billings Sugar Co. v. Fish, 40 Mont. 256, 106 P. 565; Northern Pac. Ry. v. Mjelde, 48 Mont. 287, 137 P. 386; State v. Dodd, 51 Mont. 100, 149 P. 481; State ex rel. Corry v. Cooney, 70 Mont. 355, 225 P. 1007; Butte & Superior Min. Co. v. McIntyre, 71 Mont. 254, 229 P. 730; Graham v. State Board of Examiners, 116 Mont. 584, 155 P.2d 956; Mulholland v. Ayers, 109 Mont. 558, 99 P.2d 234; Plath v. Hi-Ball Contractors, Inc., 139 Mont. 263, 362 P.2d 1021.

Aside from the provisions of the United States Constitution, the only limitation on the state's power to tax applicable here is Art. VIII, Sec. 1, Montana Constitution 1972, which provides: "Taxes shall be levied by general laws for public purposes." Since Chapter 355 requires all property be levied on at the same rate, it is clearly a general law. State ex rel. Federal Land Bank v. Hays, 86 Mont. 58, 282 P. 32; Stanley v. Jeffries, 86 Mont. 114, 284 P. 134. Similarly, given the express declaration of Art. X, Sec. 1, Montana Constitution 1972, that the development of a quality system of education is a state goal, there can be no

dispute with the proposition that a tax for the support of education is levied for a public purpose. Thus it follows that Chapter 355 is not violative of any constitutional provisions and is a constitutionally valid exercise of the state's power to tax.

Against this background the issues raised by respondents may be settled. The first issue that Chapter 355 violates Art. X, Sec. 1, Montana Constitution 1972, is premised on the requirement contained therein that the legislature provide full funding of the basic educational system. It is respondents' position that Art. X, Sec. 1(3), requires the legislature fund its share of the cost of education solely from the traditional sources of foundation program funding--oil and gas royalties, income taxes, and corporation license taxes or other traditional general fund sources. This view is not correct. The only mandate contained in Art. X, Sec. 1(3), Montana Constitution 1972, is that the legislature fully fund the state's share of the cost of basic education. It is silent as to the means the legislature may employ for this purpose. By enacting Chapter 355, the legislature elected to employ a statewide property tax. While the wisdom of that legislative choice may be questioned, its constitutional validity may not. That other sources of revenue may be available, such as severance, excise and sales taxes as suggested, is true. But, the legislature has chosen property taxes to the dismay of many property owners. As our foregoing discussion indicates, the legislature could adopt a property tax and having done so it is free to use the proceeds realized by the tax for any public purpose, including fulfillment of the duty to fund public education.

Respondents' second issue is that Chapter 355 discriminates against the taxpayers of Fallon County. There are two facets to this issue. The first is predicated on the claim that the property tax levied by Chapter 355 on that particular part of all property

in the state which is situate in Fallon County will produce funds in excess of those required by that particular part of the public school system located in Fallon County. It is asserted that those provisions of Chapter 355 which require the excess funds be remitted to the state result in a taking of property without due process.

Reduced to its simplest terms, respondents' position is that revenue raised by a state tax must be expended in the county in which that revenue originates. Respondents reach this conclusion by first denominating the tax levied by Chapter 355 as a "local property tax" and then applying the generally accepted rule that one district cannot be subjected to tax for the benefit of another district.

As our preceding discussion points out, the tax levied by Chapter 355 is a state tax levied for the benefit of the state as a whole. Viewed in that light the tax does not offend against the rule relied upon by respondents since the taxing district, the state, benefits as a whole from the tax imposed.

That some areas derive more immediate and direct benefits from the tax is not an objection, if the community as a whole benefits. State ex rel. Henderson v. Dawson County, 87 Mont. 122, 137, 286 P. 125. In Kelly v. City of Pittsburgh, 104 U.S. 78, 82, 26 L ed 658, a landowner challenged a tax on the same grounds relied on by respondents here, that because he did not receive a direct personal benefit from a tax it amounted to a taking of property without due process. In rejecting this claim the United States Supreme Court said:

> "It may be true that he does not receive the same amount of benefit from some or any of these taxes as do citizens living in the heart of the city. It probably is true * * * that his tax bears a very unjust relation to the benefits received as compared with its amount. But who can adjust with precise accuracy the amount which each individual in an organized civil community shall contribute to sustain it, or can insure in this

respect absolute equality of burdens, and fairness
in their distribution among those who must bear
them?

" * * *

"Clearly, however, these are matters of detail
within the discretion, and therefore the power,
of the law-making body within whose jurisdiction
the parties live. This court cannot say in such
cases, however great the hardship or unequal the
burden, that the tax collected for such purposes
is taking the property of the taxpayer without due
process of law."

This general rule is summarized in Cooley on Taxation,

V. 1, 4th Ed., § 89, P. 214:

" * * * However, it is almost unanimously held
that it is no defense to the collection of a tax
for a special purpose that a person liable for
the tax is not benefited by the expenditure of
the proceeds of the tax or not as much benefited
as others. * * * In other words, a general tax
cannot be dissected to show that, as to certain
constituent parts, the taxpayer receives no
benefits."

This is the rule we hold applicable to the tax questioned in the

instant case. It is a general tax levied at the same rate on all

property in the state. It is for the general state purpose of

providing a statewide system of public schools. The fact Fallon

County does not receive benefits directly in the amount of its

contribution does not provide a defense to the collection of the

taxes authorized by Chapter 355.

This same conclusion has been reached by the courts of

other states when called upon to determine the validity of a uni-

form property tax whose proceeds are distributed on a prorata

basis to schools, even though there, as here, the amount contributed

by an area in taxes exceeded in some instances the amount returned

to the area for its schools. Sawyer v. Gilmore, 109 Me. 169, 83

A. 673; Raynolds v. Swope, 28 N.M. 141, 207 P. 581; Miller v. Korns,

107 Ohio St. 287, 140 N.E. 773; Board of Trustees, Etc. v. Board

of County Com'rs, 83 Ida. 172, 359 P.2d 635. Some state courts have

- 10 -

gone even further and held that uniform state taxation for school support is constitutionally required. Serrano v. Priest, 96 Cal. Rptr. 601, 487 P.2d 1241; Sweetwater Co. Plan. Com. v. Hinkle, (Wyo. 1971) 491 P.2d 1234, 1237.

The authority relied on by respondents to support the contention that Chapter 355 is invalid as a tax levied on one district for the benefit of another is not in point. The Wyoming case of Tennant v. Sinclair Oil and Gas. Co. (Wyo. 1960) 355 P.2d 887, dealt with a tax which was levied only on specified school districts as opposed to the uniform levy of Chapter 355, and which arbitrarily awarded a part of the fund created by the tax to the other school districts which were not subject to the tax, as opposed to the provisions of Chapter 355 which specify that each district is to receive its share in total proceeds on a modified prorata basis. Our conclusion that this decision does not apply to tax such as that levied by Chapter 355, is reinforced by the subsequent decision of the Wyoming Court in Sweetwater in which it observed that equalization of taxes for school purposes is constitutionally required in that state. It then went on to state:

> "We see no manner in which ad valorem taxes for
> school purposes can be made equal and uniform
> unless it is done on a state-wide basis. In
> other words, all property owners within the state
> should be required to pay the same total mill
> levy for school purposes."

This is precisely what has been done by Chapter 355, each property owner now pays the same basic mill levy for school purposes. Similarly, the Nebraska case cited by respondents, Peterson v. Hancock, 155 Neb. 801, 54 N.W.2d 85, can be distinguished on the grounds that while the tax was levied uniformly, certain school districts were arbitrarily denied a right to share on any basis in the proceeds. Under Chapter 355 all school districts and all counties share in proportion to their need.

- 11 -

The second facet of respondents' claim that Chapter 355 results in discrimination against the taxpayers of Fallon County relates to the manner in which the funds raised by Chapter 355 are distributed. Respondents assert that various facts would reveal that some school districts are unable to provide educational offerings comparable to those which are provided in other districts. For example, respondents maintained that a comparison of curricula would demonstrate a wide disparity in the educational opportunities offered by different schools. No doubt this is true. No doubt other comparisons could be made which would show differences in educational opportunity. Respondents assert that these comparisons would conclusively demonstrate the foundation program itself is ill conceived in that it does not take into consideration to a sufficient degree the differences in schools resulting from differences in the number of pupils. It is argued that the foundation program of X dollars per pupil is itself arbitrary and lacking in uniformity. Further, that the 7% limitation on increases in school budgets has effectively locked those schools with substandard programs into a position of permanent inequality of educational opportunity.

In this case, no assertions of substandard programs are made. The foundation program provides for accreditation and other standards. We do not here rule on the validity of the 7% limitation on budgets as provided in Chapter 355. Without the facts of a specific situation before us, we can only consider the constitutionality of the foundation program and the budget limitations of Chapter 355 on their face and not as applied. Certainly any reasonable person would grant that there are imperfections in the foundation formula, with its many variables. The constitutional test is not perfection, but rather whether when taken as a whole it is a rational method to accomplish the goal of equal educational

opportunity for each person of the state. As the United States

Supreme Court observed in San Antonio School District v. Rodri-

guez, 411 U.S. 1, 93 S.Ct. ____, 36 L ed 2d 16, 48:

> "The very complexity of the problems of finan-
> cing and managing a statewide public school
> system suggest that 'there will be more than one
> constitutionally permissible method of solving
> them,' and that, within the limits of rationality,
> 'the legislature's efforts to tackle the problems'
> should be entitled to respect. Jefferson v.
> Hackney, 406 U.S. 535, 546-547, 32 L ed 2d 285,
> 92 S.Ct. 1724 (1972)."

An on the face examination of the provisions of the founda-

tion program dealing with the distribution of state educational

funds reveals that such funds are distributed basically on a per

student basis with the smaller schools receiving somewhat more

per student than the larger schools. Provision is made for budget

increases resulting from an increase in enrollment. Further, the

trustees are empowered to increase the local budget through addi-

tional levies, if approved by the district's electors. It is

difficult to visualize a method other than some system of cash

grants through which the state could meet its constitutional obli-

gation under Art. X, Sec. 1, Montana Constitution 1972, to provide

for and fund a basic educational system while leaving the actual

supervision and control of each school district in a board of

trustees as required by Art. X, Sec. 8, Montana Constitution 1972.

Accordingly, while not foreclosing a consideration of the founda-

tion program and the budget limitations of Chapter 355 as applied,

we hold that on its face the program is a rational method of pro-

viding the required basic public education.

Because of the view we have taken of the other issues in

the case, it is clear that the factual questions alluded to in

the final issue raised by respondents, while real, are not relevant.

We will not consider that issue further.

This opinion constitutes a judgment that Chapter 355 is

constitutionally valid on its face.  Therefore, defendant Silver

Roth, County Treasurer of Fallon County, is ordered to remit

forthwith to the state those monies collected under authority of

Chapter 355.  Each party to bear its own costs of this proceeding.


_____
                                   Justice

We concur:

_____
     Chief Justice

_____

_____

_____
     Justices


- 14 -